CHARLES I. KANE et al., Complainants, Appellees.

*vs.*

JOEL PARKER, Impleaded with others; Defendant, Appellant.

APPEAL IN EQUITY FROM THE CIRCUIT COURT OF MILWAUKEE COUNTY.

A final decree in partition, confirming the report of the commissioners, and vesting the title to the several shares in the respective owners, cannot be opened on mere motion, after the term at which it was entered has passed.

If the several parcels of land surveyed and set apart on partition can be ascertained and identified, by the plot, and the courses and distances given in the report, with reasonable certainty, it is all that is necessary.

A report, purporting to be the report of all three of the commissioners of partition, though actually signed by but two, is good and valid if it appear that they all met and acted together in making the partition. But it is essential that all should meet and act, though it is sufficient if a majority sign the report.

Brown, Kane and Tweedy joined in a bill for partition of real estate, making Parker and Beckman defendants. Brown, Kane and Tweedy owned three-eighths, Beckman one-eighth, and Parker four-eighths. During the pendency of the suit, Brown and Beckman sold their interests to Kane. *Held*, that this did not render the filing of a supplemental bill necessary, and, as Parker's interest was not affected by the change, he could have no cause of complaint on account of such transfers.

It is the duty of the commissioners to erect permanent monuments or corner posts on surveying the lands to be divided, and where this is neglected, reference will be again made to them, or, if they are absent, to other commissioners, to cause it to be done

The setting up of monuments, or corner posts, by the surveyor who made the survey under the directions of the commissioners, after they had left the state, cannot be substituted or adopted for the act of the commissioners. If the original commissioners are absent or unable to perform the duty, a new commission will be ordered.

THIS was a bill for partition of real estate, filed by Charles I. Kane, John H. Tweedy and James S. Brown, complainants, against Carl Beckman, Joel Parker, and Benjamin F. Adams, and the unknown owners of lots one, three and six in the northeast quarter of section 21, town 7, range 22.

The complainants state that they are seized in fee of the undivided three-eighths of said lots three and six, containing eighty-

nine and a quarter acres, as tenants in common with the defendants; but of the interest of the others they are not certain; and pray that the defendants may answer, &c., and that partition of the land may be made to them according to their interests.

The defendant Beckman answers, admitting the charges and statements of the bill, and submits to such decree as the court may make.

Parker also filed his answer, claiming to be the owner of one undivided half of the premises.

The bill was filed August 9, 1850, and, the answers being in, June 11, 1851, the matter was referred to a special commissioner, to examine and report the situation of the premises, whose report shows that the premises could be divided without prejudice, except a water power thereon claimed by the owners as appurtenant to the premises, and recommends the sale of ten acres, or so much of said land as may be necessary for the enjoyment of the water power, for the benefit of the owners.

On the day of the filing of this report, the court below made a decree, reciting that, "It appearing to the court that since the filing of the bill in this cause, James S. Brown, one of the complainants, and Carl Beckman, one of the defendants, have respectively conveyed their interests to Charles I. Kane, the rights and interests of the parties are adjudged and decreed as follows: Three-eighths to Charles I. Kane, one-eighth to John H. Tweedy, and one-half to Joel R. Parker;" and ordered partition accordingly of such portion as could be divided, and that the residue be sold, &c.; and commissioners were appointed to make partition in conformity with such decree.

On the 10th day of April, 1854, the commissioners made report of partition, setting off to each of the owners their interests or estates respectively by metes and bounds, except the water power, and some two acres of land, "with whatever may be convenient to the full and complete enjoyment of the same, being all the right to build and maintain a dam on said Milwaukee River on the said land, together with the privilege of overflowing so much of said land as is now overflowed by the water of said river, with the dam raised to its present height," setting out also the land so reserved for the purposes of the water power, by metes and bounds, and recommending the same to be sold for

the common benefit of the owners, according to their respective interests.

The commissioners so appointed, were Francis Randall, Levi Blossom and John P. McGregor, and their report was, on the same day, confirmed by the court, and a decree was pronounced accordingly. The report purported to be made by all three of the commissioners, but was signed by only two, Randall and McGregor.

On the 13th day of May, 1854, the defendant Parker filed his motion, accompanied by affidavits, to vacate the order confirming the report of the commissioners, and for such other order in the case as might be agreeable to equity and good conscience, for the reasons following:

"1st. Because the commissioners had not designated the several shares and portions of the different parties, by posts, stones, or other permanent monuments:

"2d. Because the commissioners had divided the real estate among the parties, according to their respective rights and interests as decreed, and because their division was manifestly unfair, and against the rights of the defendant Parker:

"3d. Because, by the division, the defendant Parker did not receive, either in quantity, quality or value, one-half of the lands divided, but less:

"4th. Because the report does not describe the land divided, and the shares allotted, with convenient certainty."

A large amount of testimony was taken by the respective parties, to sustain the objections to the report on the one hand, and to sustain the report of the commissioners on the other. This testimony was very discrepant, and in some respects quite contradictory. It is substantially commented upon in the opinion of the court.

This motion to set aside the report founded upon the record and the testimony taken, was argued June 3d, 1854, and an order entered overruling and denying the motion, and the same day an order was entered referring the report again to the commissioners, instructing to cause to be placed at the corners in the boundary lines described in the report, monuments, and to report at the next term.

At the January term next ensuing, the affidavit of A. L. Kane

was filed, stating that all of the commissioners were absent from the state; and hence the late order of the court had not been complied with by them, together with the affidavit of Huntington, the surveyor, stating that he made the original survey by direction of the commissioners, and that he had gone over the ground, and placed the monuments at the corners as directed by the court to be done by the commissioners. At the same time was filed the counter affidavit of Joseph Clark, stating that he was a surveyor, that he had examined the plot, and made a careful survey of the lands, and found that the corners would not agree with the designation of the plot, and that the survey and plot of Huntington were not correct. There were other affidavits presented, tending to show that Huntington's survey and map were incorrect, but in what degree, or to what extent, it did not appear.

And thereupon the order of court was entered as follows:

"On reading and filing the affidavits of A. L. Kane, W. P Huntington, Joseph Clarke and C. K. Wells, and it appearing to the satisfaction of this court, that all of the commissioners appointed in this cause have removed from this state, and cannot act further in this cause, and it further appearing that W. P. Huntington was the surveyor originally employed by said commissioners to make the survey of the premises divided, and that he has established posts, as required by the order of this court, upon the corners fixed by the said commissioners, in their said report and survey, said order having been substantially complied with, further compliance therewith having become impossible by reason of the removal of the said commissioners from the state, it is upon motion of Brown and Ogden, solicitors, &c., directed and decreed that the order of confirmation and decree heretofore made by the court, and bearing date on the 10th day of April, A. D. 1854, be, and the same is, hereby restored, ratified and confirmed, and that said order and decree do stand forever valid and effectual between the parties, and that said acts of said Huntington establishing posts as aforesaid, be, and the same are hereby ratified as a compliance with the order of the court' made June 3d, 1854, directing the same to be done.

January 23d, 1854, defendant Parker took his appeal from the decision of January 11, 1855, ratifying and restoring the decree of April 10, 1854, and from all interlocutory decrees, previous

Kane et al. vs. Parker.

to the final order in this case entered, within fifteen days before such appeal, and from any final order entered within two months theretofore.

The principal points made by counsel appear, and are dis-- cussed in the opinion of the court.

*J. Downer, and Wells & Brigham,* for the appellant.

*Brown & Ogden,* for the appellees.

*By the Court,* COLE, J.    The confirmation of the report of the commissioners, and the decree of partition, made on the 10th of April, A. D. 1854, vested the title to the allotted premises in the persons to whom they were severally assigned; and we do not think that the title could be again divested by the motion made at the subsequent term in May.    We shall not, in this case, decide what would be the proper application to open a final decree of partition, after the term at which it was entered has past, but we are clear that it cannot be done by mere motion.    Section 31, chap. 108, R. S., provides, that "upon the confirmation of the report of any commissioners by the court, a decree shall thereupon be entered that such partition be firm and effectual forever, and such decree shall be binding and conclusive" upon the parties subsequently named in the statute.    Is it competent for the court, after term, upon motion, to open decrees vesting title to real estate, and change and transfer it in that manner when it has become fully and absolutely vested by such decree?    We think not.    There has already been considerable litigation in this cause, and to avoid still further, which might arise, we have concluded to examine and pass upon the points made by the appellant in the same way that we should had the decree been regularly opened by the proper application in the court below.

The first objection made is, that the survey of Huntington, the surveyor employed by the commissioners, and on which their report is based, is full of errors and blunders, and incorrect; and the report and partition void, or at least voidable for uncertainty.    The argument relied upon to show that this survey is incorrect and erroneous, is, that the parcels into which the premises are divided, when put together, amount to only about eighty-four and a half acres, while the number of acres, as stated

in the bill by the government surveys, amount to eighty-nine and a quarter. There is quite a discrepancy, as to area, between the government surveys and the one made by Huntington under the direction of the commissioners, and the question is, which are we to take as the correct survey? We think we must take that made under the direction of the commissioners, as likely to be the more accurate. The government surveys, though upon the whole quite correct, yet are not entirely so. We suppose every person who has had much occasion to examine and survey them, even upon ground where there would not appear to be any difficulty in measuring the land with strict accuracy and closing the work, has found the line not to close, and sections and quarter sections to exceed and fall short of the requisite number of acres. Probably these discrepancies are found more frequently in fractional sections than elsewhere. A portion of these premises lie along the Milwaukee River; the ground in places is quite broken, and the sections fractional, and it is certainly not improbable that the original survey was erroneous; at all events, we are not disposed to consider it conclusive of the number of acres in the tract.

Another objection made to the survey is, that its courses and distances are incorrect. We have already referred to the motion in May for an order vacating the one which had been entered at the April term, confirming the report of the commissioners, and briefly expressed our views of the regularity of that practice. The motion was granted, however, and an order was made vacating the order of confirmation, so as to give the appellant an opportunity of showing that the report was incorrect, and should be set aside. Considerable testimony was taken for the hearing of this matter, both to sustain the report and to show that it was incorrect as well as unjust. Clark, a civil engineer and surveyor, was a witness for the appellant, and stated in an affidavit which he made, that he had taken the plot, and from the courses and distances, as marked, calculated the boundary lines, and failed to make them meet. On his cross-examination he entirely destroyed the effect of this testimony, by stating that he could, from the plot, stake out the various portions, as delineated upon it, as near as practicable; that for all practical purposes the survey, as plotted, was accurate. In the second affidavit which he

made, he stated that he had examined the plot on file in the cause of lots one and six, on section 21, and had made a careful survey of said lands, and found that the corners would not agree with those designated upon the plot, and that he pointed out to Randall, one of the commissioners, the discrepancy between the survey made by him and the one represented on the plot, and that the corner stakes set by him and Huntington did not coincide. He further states that it was impossible to find the corners as represented on the plot, and make the inside and outside work agree. The evidence of this witness is not satisfactory, since he, undesignedly or otherwise, omits to state how great the discrepancy was between his survey and the one made by Huntington, and how far the corner stakes were apart. As a matter of fact, we are well aware that the same surveyor, however competent, and with chainmen the most careful, might not, and very likely would not, upon a second survey of several tracts as irregular as these upon this plot, make his work exactly correspond with the first, and yet for all practical purposes both surveys might be sufficiently accurate. Strict mathematical precision cannot be attained, and must not be expected in these surveys. The appellant undertook to show that the plot made by the commissioners, or by the surveyor under their direction, was clearly incorrect, and to such a degree that the partition based upon it was void for uncertainty.

The object of having a plot attached to the report was to show, or assist in showing with greater certainty, the premises allotted by the commissioners to each party. If these premises can be ascertained and identified with reasonable certainty, either from the plot or the courses and distances given in the report, it is all that is necessary. Clark's testimony fails to establish the fact that they cannot. It shows this, and this only, that there was a discrepancy between his survey and the one made by Huntington; but how great the discrepancy was, or whether it was material, he does not disclose. The case is not strengthened by Brigham's evidence, since all that he knows about this discrepancy is what Clark told him. The same observation applies to Wells' testimony. Neither of these witnesses surveyed the ground, or tried to survey it; they do not pretend to say from their own knowledge, that the courses and distances of Hunting-

ton's survey are so inaccurate that the land cannot be ascertained by them. They rely entirely upon Clark's statements, which have been sufficiently noticed. Furthermore it is said that the quantity of land contained in each parcel of land into which the tract is divided, is not correctly given according to the courses and distances on the plot and in the report. If we rightly understand this objection it is not well taken, for upon an examination of the plot, it will be found that it does state the number of acres in each parcel. This, we presume, was ascertained by the surveyor or commissioners by mathematical calculation; and there is no testimony to show that the calculation was erroneous. But a question is made as to the validity of the report, because it is alleged that it does not appear that Blossom, one of the commissioners, was present when the report was drawn up and acted on, or that the commissioners ever met together and adopted the report, or that Blossom ever saw it. The record shows that Blossom, with the other commissioners, took the usual oath, to honestly and impartially discharge his duty as commissioner. The report is made in the names of Randall, Blossom and McGregor. Among the items of charges accompanying the report, is one of $15 for Blossom's services as commissioner. It is true that he did not sign and acknowledge this report with the other commissioners, nor was it necessary for him to do so. If he met and acted with the other commissioners in making the partition it was sufficient. His neglecting to sign and acknowledge the report, does not do away with the presumption arising from the above circumstances, that he did meet and act with the other commissioners in making the partition. If it had been shown that all the commissioners did not meet together in the performance of their duty, then beyond controversy the partition made was invalid. The statute is too clear upon that point to admit of doubt in the absence of all authority going to sustain that position. *Section 28, Chap. 108, R. S.*

The second point made by the appellant is, that the commissioners and Circuit Court transcended their power in granting an easement, to wit, the right to overflow part of the land set off to the appellant; that this could not be done in a partition suit; all that could be done in such a suit was to divide the land absolutely or sell it. There can be no doubt of the correctness of

that proposition, that the commissioners could not subject the appellant's land to the right of being overflowed with water for any purpose whatever. But have the commissioners done so? It must be confessed that the language used in one clause of their report is unfortunate, and would seem to favor the idea that they intended to subject the appellant's land to an easement; but a fair construction of the whole report will lead to a different conclusion. They assign the appellant thirty-seven and four hundred and ninety-seven thousandths of acres more or less, together with the hereditaments, the same being, quality and quantity relatively considered, one full equal one half part of the said lands and premises whereof partition was made, except the certain piece of land set apart to be sold in connection with the water power on and appurtenant to said land said premises; however, being subject to the rights and privileges connected with and appurtenant to the tract therein recommended to be sold. The commissioners then proceed to set apart to be sold under the direction of the court, the same being so situated that a partition and division thereof amongst the persons interested could not be made without great prejudice to the owners, all that portion of the said premises described as follows, to wit: All the water power on and appurtenant to said land of which partition is made as aforesaid, with whatever may be convenient to the full and complete enjoyment of the same, being all the right to build and maintain on said Milwaukee River on the said land any dam, together with the privilege of overflowing so much of said land as is now overflowed, or may hereafter be overflowed by the water of said river with the dam raised to its present height. The commissioners also set aside to be sold with this water power, two and a third acres of land, upon the river where this water power exists. From this it appears that the commissioners set aside to be sold, the water power upon the river and whatever might be necessary to its full and complete enjoyment. The two acres and a third were undoubtedly considered by them all the land that would be requisite for that purpose. The intent and meaning of the report seem to be not that appellant's land should be subject to be overflowed, since all was to be sold that might be necessary for the use of the water power. This water power was incapable of division, and

the only disposition that could be made of it was to sell it. This was for the benefit of all parties interested therein. This, we suppose, was what the commissioners intended should be done, and there can be no possible objection to such a proceeding. The language in this part of the report is clear and free from doubt, and there is no room for misunderstanding it. It is that this water power and all which should be convenient and necessary, should be sold. The clause in the former part of the report, to the effect that appellant was to take his land subject to the rights and privileges of the water power, &c., is very ambiguous in the connection in which it is used; but when considered in connection with this part of the report, can have no meaning whatever. We are disposed to regard it as surplussage, and not as creating an easement upon appellant's land.

Neither do we think that it was necessary to file a supplemental bill or bill of revivor on account of any change that had taken place in the interests of the parties after the commencement of the suit. The bill was filed, claiming, as tenants in common, three-eighths of the premises, by Kane, Tweedy and Brown, in August, 1850, against the appellant and one Beckman. Beckman, who owned an eighth, conveyed, in December, 1850, his interest to Kane; and Brown quit-claimed to the same party whatever interest he had in October of the same year. The appellant owned one-half of the premises when the bill was filed, and the conveyances since made do not in any way affect his rights. The persons who own the land, are all before the court. A good decree of partition can be made between them. It must be quite immaterial to the appellant whether one of the complainants owns one-eighth more than he did at the filing of the bill, or not. The change which has taken place here, is quite different from that which takes place upon the death of a party during the pendency of a suit. In that case, it is necessary to bring new parties, interested in the property, before the court, before a partition can be made. The only change which has taken place here, is, that one of the complainants has obtained, during the pendency of the suit, a greater interest than he had at the commencement. The fourth point made by the appellant is, that the partition is unequal and unjust. We presume he relies chiefly upon this objection to set aside the partition. After

having carefully examined all the testimony advanced upon this point, we have come to the conclusion, notwithstanding the great diversity of opinion that exists among the witnesses as to the fairness and equality of the division, that it is substantially just and proper. The property divided is situated near the city of Milwaukee. Its chief value consists in the fact that it will soon be required for city lots. A part commands a fine view of Lake Michigan, while another part lies along and overlooks the Milwaukee River and the city. Some of it is cut up by ravines that injure it for building purposes. Prospect street, one of the principal and most beautiful streets leading out of the city, extends diagonally across the eastern and southern portions, and there are northerly, westerly and easterly slopes to the ground. Fancy and taste lead one to prefer, for a residence, a lot having a lake view; while another thinks a river and city view equally desirable. If all the testimony be examined, it will be seen that witnesses form their opinions as to the fairness and equality of the division upon what they conceive to be the beauty of this or that location for building purposes. This beauty of situation constitutes the chief value of this kind of property, it is true, but we think the commissioners did not disregard it. Perhaps, upon no property would men's opinions more differ than upon property situated like this. It would be almost impossible to make any division that would be satisfactory to the parties, particularly if it was required, as in this case, that the land allotted to each should be in one body. The eight witnesses who testified upon the part of the appellant, think that he does not get one-half of the land, quantity and quality considered; while the five witnesses called to sustain the report, think the division fair, and that the appellant is not prejudiced by it. Two of the commissioners were also sworn, and state that they went over the land a great many times, found great difficulty in making any division, and could only agree upon the one made. The commissioners are intelligent and competent men; they acted under the solemnities of an oath to honestly and impartially discharge their duties, and they had as good, if not better, opportunities of examining the land, and judging of its value, as any of the witnesses. They undoubtedly took into account the advantage and disadvantage of each location. Their report is entitled to great

weight, and we are disposed to sustain it, when the evidence of its inequality is so contradictory as in the present case.   We do not think that we should be justified in setting it aside, unless it was clear that injustice was done by it.   2 *Green's N. J. R.* 637.

There is one objection taken to the proceedings in the court below, which is valid.   The commissioners neglected to designate the several shares allotted by stones or other permanent monuments, as required by the statute.   The court made an order on the 3d of June, 1854, referring the report to the commissioners, to have these posts established.   One of the commissioners had left the state; and the other two also left during the summer or following autumn.   Owing to this absence, the order was not complied with.   Huntington, the surveyor employed to make the original survey, went and established the monuments, and fixed the corner posts.   Upon his affidavit, and the affidavit of Kane, showing the absence of the commissioners, the court confirmed his acts, and held that the order had been substantially complied with.   Erecting the monuments and corner posts was as much the duty of the commissioners as any other act to be performed by them.   They were to see it properly done, and it was the right, and for the safety of all, that it be done by them or under their immediate personal direction.

So much of the decree, therefore, as confirms the report of the commissioners, and the partition made by them, is affirmed; and so much of it as confirms the acts of Huntington in establishing the corner posts, reversed.   The cause is referred back to the Circuit Court for the appointment of new commissioners to set monuments and corner posts according to the original survey; and for the purpose of selling the water power, and whatever may be necessary to its full enjoyment, pursuant to the decree entered April 10th, 1854.