### Jones v. Reid Adm'r et al.

Decided March 30, 1878.

Special Term. 1878.

1. At law, a wife's earnings belong absolutely to the husband.

2. Where, by the husband's consent, the wife earns money, with the understanding and agreement between them, that it is to be hers, and the rights of creditors do not intervene, it will in a court of equity be given her, as against the devisees and distributees of her husband.

3. Where a party files a bill for the purpose of recovering a claim against the estate of a testator for her separate earnings, while the wife of such testator, and also prays an *issue devisavit vel non*, to contest the validity of the will; as both subjects are not within the jurisdiction of a court of equity, as such, the bill is not multifarious; and the party may abandon her right to contest the validity of the will, and proceed to establish her claim against the estate; but in such case the bill should be dismissed as to all the defendants, except the personal representative of the estate of the testator.

4. In a suit to recover a claim against an estate, simply, no defendant is necessary or proper except the personal representative.

5. Where pending a suit to recover a claim against the estate of a testator the executor dies, it is proper to revive the suit against the administrator *de bonis non* with the will annexed of such testator.

6. A personal judgment or decree against a personal representative, when sued in his representative capacity only, is erroneous.

Appeal, with *supersedeas*, granted upon the petition of John Reid, administrator *de bonis non* with the will annexed of William O. Reid, deceased, to a decree of the circuit court of Ohio county, rendered on the 8th day of July, 1876, in a cause in chancery then in said court pending, in which Mary Ann Jones was plaintiff and said John Reid, administrator as aforesaid, Robert James Reid and others were defendants.

Hon. T. Melvin, judge of the first judicial circuit pronounced the decree complained of.

The following is a statement of the case furnished by JOHNSON, JUDGE:

Mary Ann Jones, at May rules, 1873, filed her bill in the office of the clerk of the circuit court of Ohio county, against John Reid, Jr., executor of the last will and testament of Wm. O. Reid, deceased, John Reid, Sr., Robert James Reid, Martha W. Reid, Mary Sarah Reid and Richard O. Whelan, the allegations and charges of which are as follows :

" The plaintiff complains and says, that in the year 1854, she, then being a widow, inter-married with William O. Reid, since deceased, as hereinafter mentioned, at the town of Brownsville, in Fayette county, in the State of Pennsylvania. After residing with her said husband in Brownsville and Uniontown, also in the State of Pennsylvania, for some short time, they removed to Morgantown, in the State of West Virginia. Whilst living in the last named town, some time in the year 1861, her husband, William O. Reid, volunteered in the service of the United States as a soldier. In consequence of continued and incurable sickness and disability, caused by exposure and hardship, he was discharged from the service of the United States in 1863, and thereupon the plaintiff with her husband, the said William O. Reid, removed to the town of Bellaire, Bel-

mont county, in the State of Ohio. At this time her
husband was incapable of doing any kind of work or
labor for the support of himself or the plaintiff, his wife,
and so continued with varying health, but always unable
to work, or, for the greater part of the time, take any
care of himself whatever. Plaintiff was therefore entire-
ly dependent upon her own industry and management, in
taking care of her said husband and supporting both him
and herself. With some assistance from her son, David
Moore (the son of her first husband, John Moore), she
carried on an eating and drinking house in the town of
Bellaire, and by industry, attention and good manage-
ment, she not only supported herself and her invalid
husband, but made and saved money. Fearing to keep
the money about the house, she agreed with her husband
to deposit it in bank, not only for safe-keeping but to
gain the interest allowed by the bank upon such deposits.
There being no bank in the town of Bellaire, they came
to the city of Wheeling to make their deposits, she being
at all times accompanied by her husband; not being
able to read or write and having the most entire confi-
dence in her husband's honesty and integrity, she always
handed the money to him to make the deposits in such
amounts, as she could from time to time spare from her
business. It was her money, earned by her in the busi-
ness she carried on, with her husband's consent, receiv-
ing from him little, and for much of the time, no assist-
ance whatever. She always supposed, that these deposits
were made in her name alone, as he never claimed to own
the money, but always admitted it to be her earnings;
they both contemplated using the money for the purchase
of a farm, upon which they might be able to make a
comfortable maintenance when increasing years and in-
firmities might disable her from active labor.

These deposits were continued from time to time, and
from year to year, so that, as plaintiff has ascertained
since the death of her said husband, Wm. O. Reid, they
amounted with the accumulation of interest, to more

than $4,000.00. At the time of his death, as plaintiff has ascertained and charges to be true, he had in his possession certificates of deposit in the National Savings Bank of Wheeling—the first No. 803, bearing date the 7th of December, 1869, for $1,000; the second bearing date the 7th of December, 1869, but actually delivered to him on the 11th of February, 1870, No. 804 for $500.00; and the third, bearing date the 22d April, 1870, No. 956, for $2,500.00—the whole amounting to the sum of $4,000.00. The whole of this money belonged to plaintiff; was the savings of her industry, diligence, economy and good management. Her husband, William O. Reid, had little or nothing, when she married him, and owing to his continued sickness and infirmities was unable to earn anything from the time of his discharge from the United States army in 1863 until his death; on the contrary, he was all the time a burden and charge upon her. In the month of April, 1870, he went to stay at the Wheeling Hospital in the city of Wheeling, that he might have continued medical and other attendance with more skillful nursing than he could have at his home in Bellaire; and whilst there, he is said to have made a will or executed a paper writing, which was admitted to probate, as and for his last will, by the recorder for the county of Ohio, in the State of West Virginia, on the 6th May, 1870. This paper writing appears to have been executed by him on the 29th April, 1870; and plaintiff files herewith a copy thereof, as an exhibit marked 1, and prays that the same may be received and read as a part of this bill.

By this paper writing, purporting to be his will, the said William O. Reid is made to say—

"1st. After all my just debts and funeral expenses are paid, I give and bequeath to Richard V. Whelan the the sum of $500.00, in trust, for the use and benefit of St. Vincent Orphan Asylum, of Wheeling.

2d. All the rest and residue of my estate, of whatever nature or wherever situated, I devise and bequeath

to my three children, Robert James Reid, Martha W. Reid and Mary Sarah Reid, share and share alike. Whereas I was married to one Ann Consley some years ago, and have since ascertained that at the time of said marriage she had a husband living—that is one John Consley, of Alleghany county, Pennsylvania, and have for that reason separated from her, said marriage being a nullity, it is my will that she have no part of my estate. I hereby nominate and appoint John Reid, Jr., as the executor of this, my last will and testament."

From the extraordinary and unreasonable provisions and terms of this paper writing, its false statements, and the circumstances under which it seems to have been executed by William O. Reid, her late husband, the plaintiff believes and charges, that at the time of making the same he was not of sound and disposing mind and memory, and was laboring under some improper influence, which for the time rendered him incapable of making a will, even if he had owned anything to bequeath or devise. Plaintiff therefore distinctly charges, that said paper writing is not and ought not to have been admitted to probate as the last will and testament of her said husband. Plaintiff again distinctly alleges as true, that she was the true and lawful wife of William O. Reid, deceased, and lived with him as such in Brownsville and Uniontown, Pennsylvania, Morgantown, West Virginia, and Bellaire, Ohio. At the time of her marriage to him in 1854, she was the widow of her first husband, John Moore, who died in 1853, by whom she had one son, David Moore.

Plaintiff further says that she never knew that her said husband, William O. Reid, had been married prior, to the inter-marriage with her, or that he had the three children mentioned in said paper writing or pretended will, as Robert James Reid, Martha W. Reid and Mary Sarah Reid.

Plaintiff further says that on the 6th day of May, 1870, John Reid, Jr., who was named as executor in the

said paper writing purporting to be the last will and testament of William O. Reid, deceased, presented the same for probate to the recorder of said county of Ohio, and the same having been proved by the oaths of George O. Davenport and H. J. Zoeckler, the subscribing witnesses thereto, the said paper writing was admitted to probate by said recorder; and thereupon, on motion of said John Reid, Jr., the executor named in said will who made oath thereto, and, together with John Reid, Sr., his surety, entered into and acknowledged a bond in the penalty of $5,000.00, conditioned according to law, certificate was granted to him the said John Reid, Jr., for obtaining a probate for said will in due form. And plaintiff files herewith a copy of said proceedings before said recorder, relating to the probate of said will, as an exhibit marked 2, and prays that the same may be read as a part of this bill. Plaintiff also files herewith a copy of the bond of John Reid, Jr., as such executor, with John Reid, Sr., as his surety, as an exhibit marked 3, and prays that the same may be received and read as a part of this bill.

Plaintiff further says that John Reid, Jr., acting as such executor of William O. Reid, took into his possession the three certificates of deposit of the National Savings Bank of Wheeling, amounting in the aggregate to the sum of $4,000.00 hereinbefore particularly mentioned and set forth, and has obtained said sum of $4,000.00 with the interest which had accrued thereon, from said National Savings Bank of Wheeling, and now holds the same as such executor. Plaintiff has demanded the same from said John Reid, Jr., as her money, most wrongfully held by him in prejudice of her just rights; but the said John Reid, Jr., holding himself bound to the literal execution of the terms and provisions of said paper writing, claiming the same to be the last will and testament of her said husband, William O. Reid, not only refuses to pay her said money, which has come to his hand, but controlled by the infamously false allegations of the

said paper writing or pretended will, that her marriage with said William O. Reid was a nullity, for the reason therein stated, the said John Reid, Jr., also refuses to account for and pay over to her that part of said money, to which she is lawfully entitled as the widow of said Reid. All of which actings and doings are contrary to equity and good conscience. Plaintiff prays, that defendants may be required, under oath or affirmation, to make full, true and perfect answers to all and singular the allegations of this bill; that defendant, John Reid, Jr., as such executor of said pretended will of William O. Reid, may be enjoined and restrained from disbursing or paying over, in any manner or to any person whatsoever, the moneys which have come to his hands as such executor, until the further order of the court in relation thereto; that an account may be taken, to ascertain what moneys have so come to his hands; that an issue may be directed to be tried at the bar of this court by a jury, to ascertain whether any, and if any how much, of what was so offered for probate as the last will of the said William O. Reid, deceased, was the will of the said decedent; that whether said paper writing be ascertained to be the last will of said William O. Reid, deceased, or not, that the said John Reid, Jr., be required to pay to the plaintiff the moneys, that have come to his hands as such executor, or so much thereof as she may be lawfully entitled to have and receive, and for such other and further relief as the court may see fit to grant. Plaintiff having inter-married with one John Jones, in June, 1872, and the said John Jones having since that time deserted her, and left the State of West Virginia for parts unknown to her, and she living separate and apart from her said husband, she has instituted this suit without joining her husband, in pursuance of the statute for such case made and provided."

The bill of William O. Reid, and probate thereof, and the bond of the executor, are filed as exhibits with the bill. The summons was duly executed on the defendant, the

1878.
Special Term.

Jones
v.
Reid, adm'r
et al.

executor of William O. Reid, on John Reid; Sr., and on Richard V. Whelan, before the return day thereof. The other defendants were not found, and never appeared in the case.

There was no issue *devisavit vel non* directed. John Reid, Jr., the executor, having died, the following consent order, reviving the suit, was on the 5th of February 1876, entered in the cause, and the same order showed the said John Reid, administrator *de bonis non* &c., filed his demurrer to the bill, which was overruled.

"The defendant, John Reid, Jr., executor of the will of William O. Reid, deceased, having departed this life, by consent as well of the complainant as of John Reid, Sr., administrator *de bonis non* with the will annexed of the estate of said W. O. Reid, deceased, it is ordered that this suit stand revived against the said administrator. And the said John Reid, Sr., administrator, &c., this day filed his demurrer in writing to the bill of complaint, with an assignment of the grounds of such demurrer, which demurrer being set down for argument, was argued by counsel. And the court upon consideration thereof, doth overrule the same. And it is ordered that the defendant answer the bill on the first day of the next month."

The said demurrer is as follows :

"This defendant, by protestation, not confessing or acknowledging all or any of the matters and things, in the said bill of complaint contained, to be true in manner and form, as they are therein set forth, doth demur thereto, and for causes of demurrer shows :

"1st. That it appears from the said bill that the money and certificates mentioned in said bill were *reduced* to the possession of the said William O. Reid in his lifetime, and that said William O. Reid was the husband of the complainant.

"2d. That the said bill is multifarious in this : that the complainant seeks to recover certain money in her own right, and in the same bill seeks to recover as the widow

of William O. Reid, and asks to have the will of the said William O. Reid declared null and void.

"3d. That the complainant has not by her said bill made such a case, as entitles her in a court of equity to any relief against this defendant.

"4th. That if the matters stated in the said bill do give the complainant any cause of complaint against this defendant, the same are triable and determinable at law and ought not to be inquired into by this court.

"Wherefore, and for divers other errors and imperfections, this defendant demands judgment of this Court, whether he shall be required or compelled to make any further or other answer to the said bill or any of the matters and things therein contained, and prays to be hence dismissed with his reasonable costs in this behalf sustained."

No answer by any of the defendants was filed to the bill; depositions of the complainant, and two other witnessess were claimed to be read by the consent of the counsel; which depositions were taken in a law case between the parties, or some of them.

The consent of the counsel is in these words : "I hereby agree, that the within depositions may be read in evdence upon the hearing of the case of *Mary A. Jones* v. *John Reid's adm'r*.

"GEO. O. DAVENPORT,

"*Attorney for John Reid's administrator and for R. V. Whelan, executor.*"

The defendant R. V. Whelan having departed this life, by consent the cause was revived against J. T. Sullivan and H. T. Parks, the executors of the last will and testament of said R. V. Whelan, deceased.

The following decree was rendered in the cause :

"And this cause came on this 8th day July, 1876, to be heard upon the bill and exhibits filed therewith, the other papers previously read, and the orders heretofore made, and the depositions of the witnesses, Mary Ann Reid, Harrison Bute and Joseph Terwilliger, none of

said defendants having answered the said bill. On consideration whereof, the court, finding the allegations of said bill to be true, doth order, adjudge and decree that the defendant, John Reid, administrator with the will annexed of the estate of Wm. O. Reid, deceased, do pay to the said complainant the sum of $4,037.50 with interest from June 24th, 1870, less his lawful commission and those of said John Reid, Jr., deceased, for administration of said estate, and do also pay to said complainant her lawful costs by her about her suit in this behalf expended."

From this decree an appeal with *supersedeas* was allowed.

*Caldwell & Caldwell*, for appellants:

The children of Wm. O. Reid, deceased, named in his will as his residuary legatees and devisees were necessary parties. They not being parties may be taken advantage of by plea, answer or demurrer, or at the hearing by the court and even in the appellate court. *Clark* v. *Long*, 4 Rand. 451; *Sheppard's ex'or.* v. *Starke and wife*, 3 Munf. 29; *Armentrout's ex'or.* v. *Gibbons*, 25 Gratt. 371; *Dabney* v. *Preston's adm'rs.* 25 Grat. 838; and *McCoy's ex'or.* v. *McCoy's devisees*, 9 W. Va., 443.

The demurrer to the bill should have been sustained as the bill was multifarious. It was a statutory bill to review probate proceedings and it was improper to pray therein an account or any other relief than to have the validity of the will decided and its probate disposed of, *Coulter's ex'or.* v. *Bryan and wife*, 1 Gratt. 18; Lomax on Exec. vol. 1, 210; *Gould* v. *Gould*, 3 Story, 327; *Gaines* v. *Chew*, 2 Howard, 619, 646; Story's Equity Jurisprudence, §184.

It was error to make a personal decree against the appellant. The decree herein is a personal decree, *Lincoln's adm'rs.* v. *Stern and wife*, 23 Gratt. 822.

The personal representative of John Reid, Jr. was a

necessary party to this suit. From all that appears in the case appellant never had any of the money named in the bill. The complainant should pray an account of John Reid's Jr., administration of her husband's estate and seek a decree against his personal representative and not against appellant.

*W. P. Hubbard,* for appellees :

The decree proceeds upon the complainant's claim that her husband's estate is indebted to her, or rather that her husband's personal representative is in possession of a specific sum of money which equitably belongs to her. It is not necessary that to such a decree there should be any party defendant save the personal representative. *Coalter* v. *Bryan,* 1 Gratt. 87.

Creditor need only make personal representative of debtor a party, for the executor is to sustain the person of the testator, and to defend the estate for creditors and legatees. *Wiser* v. *Blachly,* 1 Johns. Ch. R. 438 ; *Lawson* v. *Barker,* 1 Bro. 303 ; 2 Rob. (old) Practice, 269 ; *Dandridge* v. *Curtis,* 2 Pet. 377 ; *Haycock* v. *Haycock,* 2 Ch. Ca. 124 ; *Will's adm'r* v. *Dunn's adm'r,* 5 Gratt. 408 ; *Moore's adm'r* v. *George's adm'r,* 10 Leigh 228 ; *Branch's adm'r* v. *Booker's adm'r,* 3 Munf. 50 ; Story's Eq. Pl. §§ 140, 141, 226.

This rule is applied to suits against trustees and suits by administrators. *Kerrison* v. *Stewart,* 3 Otto 155 ; *Moore* v. *Huntington,* 17 Wall. 422.

The parties who it is said should have been made parties were made parties by the bill, and process was issued against them. Supposing it is necessary to make them parties, that is as far as we are required to go. Taking an order of publication is optional with us and not required. See *Moore's adm'r* v. *George's adm'r,* 10 Leigh 236 (argument of counsel,) 245 (opinion of Brooke, J.)

" A formal objection of this kind cannot avail the party

making it when made for the first time in this court." *Cary* v. *Brown*, 2 Otto 173.

2. A demurrer to the bill for want of parties could not have been sustained, for the bill made the parties now desired by appellant.

All that is said in *Bryan* v. *Coalter* is that after a will has been declared invalid in a statutory suit brought for that purpose, the Court will not proceed to decree distribution. 1 Gratt. 47, 80 to 82. But the decree here did not direct anything to be done after setting aside the will, nor was the will set aside. The decree was made on the theory that the money claimed was complainant's separate property. If so it was equitable property, and the existence of a remedy in equity cannot be successfully denied. 2 Bishop on Married Women, § 420 ; *Huber* v. *Huber*, 10 Ohio 37 ; *Slanning* v. *Style*, 3 P. Wms. 337.

The bill is not multifarious. It is a suit brought by one person against another person for money. The statement of different facts as reasons why complainant should have the money does not make the bill multifarious. Story's Eq. Pl. §§530 to 534 ; *Robinson* v. *Guild*, 12 Metc. 323 ; *Bedsole* v. *Monroe*, 5 Ired, Eq. 313 ; *Nail* v. *Mobley*, 9 Georgia 278 ; *Varic* v. *Smith*, 5 Paige 138, 160.

This bill was framed in a double aspect (and that course is proper) so that if the Court determine against complainant in one view it may yet afford her assistance in another. Mitford's Eq. Pl., p. 39 ; Story's Eq. Pl. § 254 ; Story's Eq. Pl., §§ 278, 284 ; *Segur* v. *Parish*, 20 Gratt. 678.

The court must exercise a sound discretion on the subject of multifariousness. Multiplicity of suits is to be avoided. *Gaines* v. *Chew*, 2 How. 652 ; *Oliver* v. *Piatt*, 3 How. 411 ; Story Eq. Pl. §§ 541 a,—284.

If the bill was bad for multifariousness, the fault has been cured by the subsequent proceedings. Nothing has been done except upon the claim of the money as

1878.
Special Term.
———
Jones
v.
Reid, adm'r
et al.

complainant's separate estate. None of the ill effects given as reasons for sustaining demurrers for multifariousness have been experienced in this case.

If the personal representative of John Reid, Jr., ought to be a party, and is not, still that is not an error of which the appellant can complain, for he is not prejudiced thereby.

The consent of the appellant to the revival of the suit bars his present objection. But for that consent a *scire facias* would have issued against him, making such suggestions as were necessary to make it proper to revive against him, and he might have shown cause against it if any legally exists. By consenting as he did, he admitted the truth of those necessary allegations, and admitted that he could show no cause against the revival. According to the claim of the other side, which in the discussion of this point we need not dispute, one of the allegations necessary in the *scire facias* would be that the money in question had come to the hands of the administrator *de bonis non*. That allegation must here be considered as made and established, for that is the only way to give effect to the consent. See *Hunt's adm'r* v. *Martin's adm'r*, 8 Gratt. 581.

By consenting, the appellant held himself out to us as the holder of the fund in question and cannot now be suffered to deny that he is such holder. Had John Reid, Jr., survived, we would have a right upon the same pleadings to just such a decree against him as we have taken against appellant. By chapter 127, section 4, of the Code, we may proceed against appellant just as we might have done against John Reid, Jr. Where the administrator *de bonis non* has received the money, he may be proceeded against. *Burnley* v. *Duke*, 2 Rob. R. 102. His consent to revive is an admission of such receipt.

According to the bill, the allegations of which must here be taken as true, this money had not been administered or converted, but was held by said John Reid, Jr., " as such executor."

Appellant having, by failure to answer the bill and by consenting to revival against him, admitted the possession of assets, we were entitled to a decree for payment, and were not compelled to take a decree for an account. *Duerson adm'r* v. *Alsop*, 27 Gratt. 229, 246.

The right to the fund in question is in us, and should this court differ with us, and correct the decree in minor matters, it ought not to disturb that right of the appellee. *Will's adm'r* v. *Dunn's adm'r*, 5 Gratt. 397, 411, 412.

Complainant is so well satisfied that the appellant as administrator *de bonis non* has sufficient assets to pay this decree that, if the court shall be of opinion that in its present shape the decree is erroneous she is willing to have the decree amended so as (under chapter 131, section 20, of Code) to be payable *de bonis propriis* rather than to have the delay which taking of an account will cause.

JOHNSON, JUDGE, delivered the opinion of the Court:

The record in this cause being so confused, it is after much patient study, that I am enabled to come to a conclusion, as to what should be done in the cause.

The most important question meets us on the threshold: Should the demurrer to the bill have been sustained? The first ground of demurer is, "that it appears from the said bill, that the certificates and money mentioned therein, were reduced to the possession of the said Wm. O. Reid in his life time; and the said Reid was the husband of the complainant." If this were an action at law, and the same allegations were made in the declaration, as are found in the bill, the demurrer would have been fatal to it. The doctrine is so universally recognized, that at law the earnings of the wife are absolutely the property of the husband, that it is not necessary to refer to any authority on that subject. But the ground of demurrer, "that there is no equity in the bill," presents quite a different question.

Syllabus 1.

1878.
Special Term.

Jones
v.
Reid, adm'r
et al.

Can a married woman living with her husband, carry on a separate business even with her husband's consent, and claim the accumulation from her earnings as her own, and in a court of equity maintain her right to it? If this can be done, certainly the complainant's bill makes a strong appeal to a court of equity. Her husband was disabled from work; the wife, contrary to the usual course, was compelled to support her husband, and, as the bill shows, by her industry, frugality and economy, was enabled, after supporting her husband, to lay up about $4,000.00. All this was done with the consent of the husband; and it would be hard indeed, if under the rules of equity, that same husband, after being thus supported by his wife for years, and by his own promises, held out to her, induced her to toil in the hope of having as her own the accumulation of her earnings, by his will should wrest those earnings from her and give them to others, and leave her without support. The bill does not show, that there are any creditors, who might have claims against the husband. The rights of creditors other than the widow, do not appear to be involved in the cause; and the question is: under these circumstances will a court of equity give the wife her earnings as against the devisees of her husband?

One of the earliest cases on the subject is *Slanning* v. *Style*, 3 P. Wms. 334. In that case the widow claimed to be paid out of her husband's estate £100. It was proved in the cause, that her husband, " whenever any person came to buy any fowls, pigs, &c., would say, he had nothing to do with those things, which were his wife's; and that he also confessed, that having been making a purchase of about £1,000 value, and wanting some money, he had been obliged to borrow £100 of his wife to make up the purchase money, therefore now the widow claimed to be paid this £100." " To this it was answered, that there was no deed touching this agreement, nor any writing whatsoever, whereby to raise a separate property in a *feme covert*, which was what the

law did not favor; that it was no more than a connivance or permission, that the wife should take these things and continue to enjoy them during his (the husband's) pleasure, which pleasure was determined by his death; besides this agreement was a voluntary one, for which a court of equity usually leaves a party to take his remedy at law; and that in truth the husband's borrowing this £100 of his wife was no more than borrowing his own money."

But Lord Chancellor Talbot decreed, that the widow was well entitled to come in for this £100 as a creditor before the *master;* observing, " that the courts of equity have taken notice of and allowed *feme coverts* to have separate interests, by their husband's agreements; and this £100, being the wife's savings, and their being evidence, that the husband agreed thereto, it seemed but a reasonable encouragement to the wife's frugality; and such agreement would be of little avail, were it to determine by the husband's death;" and there being no creditor of the husband, whose rights could be interferred with, the money was decreed to be paid her.

We have examined a number of authorities upon the subject, and conclude, that where by the husband's consent the wife earns money, with the agreement or understanding between them, that it is to be hers, and the rights of creditors do not intervene, it will in a court of equity be given to her, as against the devisees or distributees of the husband. 1 Roper H. & W. 140, 172; 2 Story's Eq., § 1387; *Basham* v. *Chamberlain,* 7 B. Mon. 443; *Conners* v. *Conners,* 4 Wis. 131; *Kee* v. *Vasser,* 2 Ire. Eq. 553; *Kinney* v. *Fellows,* 15 Vt. 375; *Borron* v. *Borron.* 24 Vt. 375; *Pinkston* v. *McLemore,* 31 Ala. 308; *Penn* v. *Whitehead,* 17 Gratt. 503. We do not discuss or decide the question here whether or how far such an agreement between husband and wife would be valid, if it affected the rights of the creditors, as that question does not arise in this cause. The bill, we think, shows a proper case for relief, and the demurrer for want of equity was properly overruled.

Syllabus 2

Another ground of demurrer alleged is, that " the bill is multifarious, in this, that the complainant seeks to recover certain money in her own right, and in the same bill seeks to recover as the widow of William O. Reid, deceased, and asks to have the will of William O. Reid declared null and void."

It is not necessary to decide, whether the complainant could claim, both as the widow [of Wm. O. Reid, and at the same time claim money as a creditor of the said Reid, as she set up no distinct claim for a distributive share of her husband's estate in the bill; all there is said as to her right as distributee in the bill is, " but the said John Reid, Jr., holding himself bound to the literal execution of the terms and provisions of the said paper writing, claiming the same to be the last will and testament of her husband, William O. Reid, not only refuses to pay her said money, which has come to his hand, but controlled by the infamously false allegations of the said paper writing or pretended will, that her marriage with said William O. Reid was a nullity, for the reason therein stated, the said John Reid, Jr., also refuses to account for and pay over to her that part of the said money, to which she is lawfully entitled as the widow of said Reid." And there is no distinct prayer for her distributive share made by the complainant, although that would not be necessary, if the bill had been properly framed for that purpose, as there is a prayer for general relief. But it is said, the bill is multifarious, because it also asks an issue *devisavit vel non,* and *Coalter, ex'or* v. *Bryan et ux.*, 1 Gratt, 18, is relied upon to sustain the position.

In that case the suit was brought for the double purpose of contesting the validity of the will, upon the final *probat* before a jury, and to enforce the claims of complainants to the property, as heirs and distributees of the decedent. Judge Baldwin, who delivered the opinion of the court, said : " It is clear from what has already been said, that if the whole *probat* jurisdiction had re-

mained in the courts of law, the heirs and distributees of a decedent could not have maintained a bill in equity, to impeach directly the validity of a will there admitted to *probat;* or to bring it into question incidentally, by claiming the property thus disposed of. How then does the court of chancery obtain jurisdiction over the property, by the transfer to that forum of the final *probat* of the instrument? The only effect of a verdict against the will, upon the issue of *devisavit vel non,* would be to place the rights of property in the same situation, as if the will had never been made. * * * * The most that can be said in behalf of the ulterior relief sought by the plaintiffs is, that the court of chancery having obtained jurisdiction of the subject for the purpose of deciding upon the validity of the instrument, it ought to go on and administer complete justice between the parties, instead of turning them round to another action, whether in the same or a different forum. But this is founded upon the supposition, that the court of chancery has obtained jurisdiction of the subject as a court of equity. Such however is not the fact; its jurisdiction is merely that of a court of probate, and to be exercised not by the court, but by a jury under its supervision, and for the decision of a common law issue affecting the legal rights of the parties." The learned judge then goes on to argue that the bill cannot be maintained for those two purposes. But it was held, that the suit was proper for an issue *devisavit vel non,* and the bill sufficient for that purpose.

Judge Story in his equity pleadings §283 says: "Although a bill is ordinarily open to objection for multifariousness, which contains two distinct subject matters wholly disconnected with each other, yet if one of them be clearly without the jurisdiction of a court of equity for redress, it seems, that the court will treat the bill, as if it were single, and proceed with the other matter, over which it has jurisdiction, as if it constituted the sole object of the bill." The same principle was recognized by this court in *Smith* v. *McLain,* 11 W. Va. 654.

1878.
Special Term.

Jones
v.
Reid, adm'r
et al.

Syllabus 3.

In this cause, the court of equity as such did not have jurisdiction of both the subjects of the bill, and could not proceed with both. The bill therefore should not have been dismissed for multifariousness, and the demurrer on that ground was properly overruled. But there having been no issue *devisavit vel non* in the case, and the cause being matured as to the other subject, the bill ought to have been dismissed, as to all the defendants before the court, except the personal representative of the estate of William O. Reid, deceased.

The last ground of demurrer is, "that if the matters stated in said bill do give the complainant any cause of complaint against the defendant, the same are triable and determinable at law, and ought not to be inquired into by this court." This objection is already answered, as we have seen, that she could not at law have sued for her separate earnings, as at law they absolutely belong to the husband. Our statutes, as to the rights of married women, do not provide for such a case, and leave her precisely as she would have been, had those statutes never been enacted. Had she been living separate and apart from her husband, when she accumulated the property, she would have been protected by §13 of chap. 66 of the Code.

There was no error in allowing the suit to abate, as to the devisees, the children of William O. Reid, deceased. They were not necessary parties to the suit, for the recovery of complainant's demand. The personal representative of William O. Reid, deceased, was the only defendant necessary ; it was his duty to protect the estate against the recovery of any unjust demands. This is simply a suit, in equity, by the plaintiff, because under the circumstances she could not bring it at law, to recover money, that the testator owed her; money which she entrusted to his care to deposit in bank for her, and which he converted to his own use, she is not seeking to recover the specific money, but claims, that the estate of the deceased husband owes her that sum. It is not there-

fore distinguishable in principle from a simple action at law, in an ordinary case brought by a creditor against the personal representative of a deceased party, to establish a demand against the estate, and therefore the personal representative is the only necessary defendant. Sto. Eq. Pl. §140, 141, *Moore's adm'r* v. *George's adm'r.* 10 Leigh 228.

.It is also insisted for the appellant, that the personal represenative of John Reid, Jr., deceased, who was executor of the last will and testament of William O. Reid, should have been made a party to the suit. It is not perceived, upon what principle he should have been made a party. The suit was brought to establish the claim of the plaintiff against the estate of her husband. There is nothing in the bill to justify a personal decree against either the executor, or the administrator *de bonis non* with the will annexed of Reid deceased. When the executor died, the cause was properly revived against the administrator *de bonis non*, because there was no other party, who could possibly represent the estate of William O. Reid, deceased, and defend it against the claim of plaintiff. *Sheldon et al.* v. *Armstead's adm'r et al.* 7 Gratt. 264, *Braxton adm'r &c.*, v. *Harrison's ex'ors* 11 Gratt. 30.

It is also alleged as ground of error, that the depositions, taken at law and filed in the cause, were improperly read at the hearing. It seems to be admitted that consent was given by counsel of the defendant, Reid, that they should be read; but no such consent appears in the record. As far as the record shows, no consent was given for the administrator *de bonis non* to the reading of the depositions. The consent was as, " attorney for John Reid's administrator " " to be read upon the hearing of the case of Mary A. Jones *v.* John Reid's administrator." No such case is before the court, and no such party as " John Reid's administrator " is defendant in the cause before the court, so the consent could amount to nothing. But it was immaterial, whether there were any

1878.
Special Term.

Jones
v.
Reid, adm'r
et al.

Syllabus 5.

proofs before the court, as the bill was taken for confessed, both by the executor of William O. Reid, and the administrator *de bonis non*. *Riggs* v. *Lockwood*, 12 W. Va. The plaintiff was therefore entitled to a decree for the money, that, she alleged in her bill, was due to her from the estate of her deceased husband, William O. Reid.

But it was clearly error, to enter a decree *de bonis propriis* against the administrator *de bonis non*. A personal judgment or decree against an executor or administrator, *or administrator de bonis*, who is sued in his representative character only, is fatally erroneous. *Spotswood* v. *Price, &c.*, 3 H. & M. 123; *Humphrey's adm'r* v. *West's adm'r*, 3 Rand. 516; *Pugh's ex'or* v. *Jones*, 6 Leigh 299; *Well's adm'r* v. *Dunn's adm'r*, 5 Gratt. 384.

Syllabus 6

For the foregoing reasons the decree of the circuit court of Ohio county, rendered in this cause, on the 16th day of July, 1876, is reversed with costs to the appellant; and this Court proceeding to render such decree as the circuit court should have rendered, the complainant's bill is dismissed as to John Reid, Sr., the security on the executorial bond of John Reid, Jr., late executor of William O. Reid, deceased, also the said bill is dismissed as to J. T. Sullivan and H. T. Parks, executor of the last will and testament of R. V. Whelan, deceased, with costs to the said John Reid, Sr. and J. T. Sullivan and H. T. Parks, executors as aforesaid; and it is adjudged, ordered and decreed, that the plaintiff, Mary Ann Jones, recover of the defendant, John Reid, Sr., administrator *de bonis non* with the will annexed of William O. Reid, deceased, the sum of $4,000.00, with interest thereon from the 6th day of May, 1870, together with her costs about her suit expended, to be levied of the goods and chattels of the testator, William O. Reid, in his hands to be administered.

The other Judges concurred.

DECREE REVERSED.