# CHARLESTOWN.

BRODERICK *v.* BRODERICK, *Ex'r, &c.*

Submitted June 15, 1886.—Decided September 18, 1886.

1. Where the personal representative of a decedent has failed to institute the suit prescribed by sec. 7 of ch. 87 of the Code of 1868, any creditor of such decedent after the expiration of six months from the qualification of such personal representative, whether he has obtained a judgment for his claim or not, may institute and prosecute such suit, although he may be the only creditor of such decedent. (p. 385.)

2. A judgment recovered in an action at law against an administrator or executor for the debt of his intestate or testator is not even *prima facie* evidence of the existence of such debt as a charge upon the lands of such decedent in the hands of his heir or devisee. (p. 384.)

3. In a case where a court of equity has jurisdiction of the subject-matter of the suit, whatever may be the nature or amount of the demand, the parties thereto are not entitled to a trial by a jury, except where the same is prescribed by law.   (p. 384.)

4. Where a cause has been referred to a commissioner to ascertain and report the debts due from a decedent, and he returns with his report as part thereof, all the evidence, which was before him, on which he acted, and the report is excepted to as unsupported by the evidence, and the circuit court has overruled said exceptions and confirmed the report, the Appellate Court will review the evidence but, unless the same is clearly insufficient in any reasonable view of it to support the findings of the commissioner, will affirm the decree of the circuit court confirming such report.   (p. 387.)

5. A case in which it was held in the absence of direct proof of an express contract, that the surrounding circumstances authorized a natural son to recover from his father pecuniary compensation for work and labor done, for boarding and nursing furnished to, and moneys advanced, paid, laid out and expended for the father in his lifetime.

*J. A. Brown* and *Berkshire & Sturgiss* for appellant.

*J. B. Payne* for appellee.

WOODS, JUDGE :

In the latter part of September, 1878, Lawrence Broderick never having been married, died testate in Preston county, the owner of a farm situated therein, worth between $3,000.00 and $4,000.00 and of personal property not exceeding $50.00· His will was admitted to probate, and his brother, Michael Broderick the executor therein named, was on October 9, 1878, duly qualified as such executor.

The testator divised his farm to his brother Michael during his life with remainder in fee to his two sons, John Francis Broderick and Stephen Broderick, and bequeathed to Martin Broderick a legacy of $300.00 and to his nephew Michael Broderick, the son of his brother John, a legacy of $200.00. He directed, that, if his personal estate should prove insufficient for the payment of these legacies, his farm should be sold and after the payment thereof, the residue of such proceeds was to pass to his brother Michael Broderick, but declared that under no circumstances should his farm be sold

for less than $4,000.00, and that, until that sum could be realized from such sale, the said legacies should not become payable.

Martin Broderick, who avers that he is the natural son of the testator, was the only creditor of his estate, and he preferred a large account against the decedent, claiming that the decedent was indebted to him in the sum of $2,000.00, exclusive of interest, which the executor refused to pay. This account commenced in November, 1873, and continued up to the time of the testator's death, and comprised a large number of items for repairing dwelling house, clearing lands, cleaning up fields, removing rock from fields, making fences, feeding cattle, paying taxes, loaning money, nursing and boarding testator, opening coal mines, &c.

The executor failing to pay this claim, or to bring such suit as prescribed by sec. 7, of ch. 87 of the Code, the said Martin Broderick on April 30, 1879, brought his chancery suit in the circuit court of Preston county against Michael Broderick in his own right, and as such executor, and against all the other devisees and legatees of said testator to settle the accounts of the executor, to ascertain outstanding debts, and to obtain satisfaction of his own demand out of the personal and real estate of the decedent. The plaintiff's bill, which was twice amended, alleged substantially the foregoing and in addition, the following facts;—that prior to 1862 at the request of testator he had with his family lived on his farm and labored for him thereon ; but testator being old, feeble and quarrelsome, he could not longer remain with him, and upon one occasion in 1862, when he returned to the house of the testator, where he then resided, he found, that testator had expelled his family from the house, and he and they were obliged to seek refuge elsewhere; that being then unable to obtain compensation for his labor he brought his action at law against him to recover the same, and therefore, testator executed to him his note for $400.00 in satisfaction of his demand. With this note and his other means he purchased a small piece of land, where he and family resided, until he again removed to the farm of the testator. During this interval the testator had become very decrepid and old, and altogether unable to labor on his farm

or to take care of same, which had gone into great dilapidation and decay, and he was wholly without means or money to have any work done on the farm. Being in this situation the testator made application to the plaintiff to come and live on his farm and to work and labor on the same, and insisted, that plaintiff should sell his land and appropriate the proceeds thereof and his other means, amounting to several hundred dollars, to the improvement of the testator's farm, then and there agreeing with the plaintiff that, if the plaintiff would do so and put the farm in a saleable condition, he would sell it and repay the plaintiff for his work and his expenditures.

Upon these promises and inducements he went upon said farm, sold his stock, accumulated all his resources, and expended the same on testator's farm, worked and labored thereon in the improvement thereof, fencing, clearing, building, and improving the dwelling house, and otherwise permanently enhancing the value of said farm; furnished the testator with money, paid his board-bills, taxes, and other debts against him, boarded him, and opened coal banks for him, all of which was done at his request, and he acquiesced in all, that was done or expended, and appropriated the benefit thereof to his own use. During the time he last lived upon said farm for any land cultivated by him, or crops taken therefrom under special agreement, he delivered to the testator one third thereof, in satisfaction for any such use of the land. After plaintiff had so put said farm in saleable condition, the testator offered the same for sale, as he stated, for the purpose of paying the demand of the plaintiff and providing a fund for his own support in his old age; but he was unable to make any sale thereof satisfactory to himself.

The bill prayed that the cause might be referred to a commissioner to report the amount due to the plaintiff, the amount of the personal estate in the hands of the executor for the payment of the debts; the real estate of which the testator died seized, the state and condition of the title thereto, and that so much of the real estate, as necessary for the purpose, might be sold for the payment of the amount due to the plaintiff, and for general relief.

All the defendants were proceeded against as absent de-

fendants, except Michael Broderick, who answered the bill in his own right and as such executor, and denied the justice and validity of every item of the plaintiff's demand, except one of $60.00 for boarding the testator from May to September in the year 1878.

To these answers the plaintiff replied generally, and on March 27, 1880, the cause was referred to a commissioner to ascertain and report the real estate owned by the testator at the time of his death, the state and condition of the title thereto, the debts due from the decedent, if any, and to whom owing, the order and priorities of the same, and especially what amount, if any, is due from the decedent to the plaintiff; and that he settle the accounts of the executor and ascertain what amount of personal estate remains in his hands for the payment of the debts.

The creditors of the testator having been convened in the manner prescribed by law, the commissioner took the depositions of twenty-three witnesses, including that of the executor, and returned the same with, and as part of his report, whereby he ascertained that the decedent was indebted to the plaintiff after deducting all proper credits, in the sum of $1,863.03, including interest to April 20, 1882.

To this report the executor filed twenty-four exceptions to as many separate items of the plaintiff's account allowed by the commissioner on the following grounds:

First.—That all the items were unsupported by the evidence and contrary to law.

Second.—That nine of the items excepted to were barred by the statute of limitations.

Third.—That sixteen of the other items excepted to were for moneys expended, services rendered and for work done in expectation of a testamentary compensation by the testator.

Fourth.—That items "four" and "fourteen" were for necessaries furnished, and services rendered by a son to his father without special contract, and for this reason they ought not to have been allowed; and lastly, that the plaintiff was not charged with rent for the use of the house, garden, orchard, &c., while living on the testator's farm.

The cause was finally heard on December 10, 1883, when ·

the circuit court sustained the executor's exceptions to items
one, three, seven and eight, and to part of items five, six
and twenty-nine—amounting in the aggregate to $471.28
and overruled his other exception; and after further cor-
recting the report by abating from the debts against the
executor, $120.00 improperly charged against him, con-
firmed the residue of the report, and decreed in favor of
the plaintiff for the sum of $1,391.95 with interest thereon
from April 20, 1882, and his costs, and that unless the
same be paid within sixty days, a special commissioner ap-
pointed for the purpose should sell the said land on the terms
prescribed in the decree, and out of the proceeds pay the
amounts decreed to the plaintiff.

From this decree the executor has obtained an appeal
and *supersedas*; and he assigns as error the action of the
court in overruling his said exceptions and in decreeing the
sum of $1,395.28 in favor of the plaintiff.

The grounds of error assigned by the appellant and argued
by his counsel in their brief consist of an argument tending
to show, that the amount of the plaintiff's account is so un-
reasonably large that it is improbable, nay almost impossible
that the same or any considerable part thereof can be either
reasonable or just, and that the testimony adduced before the
commissioner in support thereof is not credible, although it
must be admitted that no effort has been made to impeach
the general reputation of the plaintiff's witnesses, and
no successful effort has been made to disprove the facts de-
tailed by them. All this evidence, all the facts and circum-
stances detailed by these witnesses were carefully considered
and weighed by the commissioner in a report remarkable for
the care with which this mass of testimony has been sifted
and analyzed. Having made the evidence a part of his re-
port, and the correctness of all of his conclusions having
been called in question by the exceptions of the executor, we
have been obliged to examine, consider and weigh all this evi-
dence, and to compare his conclusions with the convictions
of our own minds, and having done so we fully concur with
the conclusions reached by the commissioner in his report
except as to the items one, three, seven and eight, and
parts of items five, six and twenty, as to which the circuit court

sustained the executor's exceptions; and we are of opinion, that the residue of the items of the plaintiff's account allowed by the commissioner was fully warranted by the evidence.

The exceptions taken to these several items, on the ground that all or any of them were barred by the statute of limitations, are untenable, as the testimony clearly shows, that all of them accrued to the plaintiff within five years next before the institution of his suit.

It is contended by the counsel for the appellants, that the plaintiff's account in this case was unfit to be entertained in a court of equity, and that under the provisions of the Constitution of this State the appellant *quoad* the litigation of this account was entitled to a trial by a jury, of which he was deprived by the action of the circuit court, which as to this branch of the case had no jurisdiction, until after the appellee had first established his pretended claim in an action at law against the appellant as such executor, whereby a jury trial would have been secured to the appellant and appellee in accordance with the constitutional provision.

To this remarkable argument two answers may be made. First.—The law is well settled, that a trial, verdict and judgment in an action at law, against the personal representative of a decedent is not even *prima facie* evidence of the existence of the debt against the heir or devisee, hence an action at law to establish such demand against the heir or devisee would be useless. Second.—In all cases, where courts of equity have jurisdiction over the subject-matter of the suit, whatever may be the nature or amount of the demand, the parties thereto are not entitled to a trial by a jury, except where the same is prescribed by law, and therefore the appellee could not be deprived of a right, which he never possessed.

As the personal assets in the hands of the executor were insufficient for the payment of the testator's debts, the executor was authorized to institute and prosecute the suit prescribed by sec. 7 of ch. 87 of the Code of 1868 for the ascertainment of debts due from his testator for the settlement of the estate and for the sale of his lands for the payment of his debts. The executor having failed to institute such suit, any creditor of his testator after

the expiration of six months from the date of his qualification as such executor had a right to institute and prosecute such suit, whether he had obtained a judgment at law for his claim or not, although he may be the only creditor of such decedent.    This right of the creditor to institute and prosecute such suit, where the personal estate was insufficient for the payment of the decedent's debts, was possessed by him, before the statute was passed, and was one of the recognized grounds of equitable jurisdiction.    1 Story Eq. Juris. sec. 546.    The effect of the statute was to confer the right to prosecute such a suit upon the personal representative which, except in special cases, he had no right to do.    This right was given to the personal representative for the limited period of six months from the date of his qualification, and afterwards, until some creditor had instituted such suit, and was rather a limitation as the creditor's general right to bring such suit than a grant of authority to do so.    *Rhinehart* v. *Rhinehart*, 21 W. Va. 76.    The executor in this case having failed to bring such suit, the plaintiff seven months after his qualification brought this suit for the purpose of proving and enforcing payment of his demand by a sale of so much of said farm as might be necessary for the purpose, as by sec. 7 of ch. 87 of the Code he was expressly authorized to do, without having first obtained a judgment therefor.

The last ground of objection on the part of the appellant to the commissioner's report and the decree founded thereon is that the relation of parent and child existed between the plaintiff and the decedent and during the period, when the alleged services were rendered, and the other items of the alleged account accrued to the plaintiff, and therefore the case under consideration is clearly within the principle declared and enforced in the case of *Hurshberger's Adm'r &c.* v. *Alger and Wife*, 31 Gratt. 52, and of *Stansbury* v. *Stansbury*, 20 W. Va. 23; and therefore the plaintiff was not entitled to recover either for his work and labor done for the boarding, care and nursing of the decedent, nor for the money loaned to or paid out for his use at his request.

In both of these cases the rule laid down is, that "as between parents and an adult child whenever compensation is claimed in any case by either against the other for services

rendered, it must be determined from the particular circumstances of that case whether the claim should be allowed or not.   There can be no fixed rule governing all cases alike. In the absence of direct proof of any express contract the question always is, can it be reasonably inferred that pecuniary compensation was in view of the parties at the time when the services were rendered; and that depends upon the circumstances of the case, the relation of the parties, being one of the circumstances."

What are the circumstances in this case?   The plaintiff avers, that he is the natural son of the testator, but there is no proof, that the testator during his lifetime by any act or word ever acknowledged, that any such relationship existed.   No act of kindness or generosity on the part of the reputed father to his natural son, if such he was, has been mentioned or proved by any of the witnesses.   How far this rule applies to the relation of the natural son to his reputed father, we need not consider; for there is no evidence in this record to show, that they ever dealt with or treated each other in their business relations, other than as strangers.   It is distinctly alleged in the second amended bill and not denied in the answers, that before 1862 the plaintiff at the request of the testator had with his family lived upon his farm and worked and labored thereon for him; that testator then was old, feeble and quarrelsome; that, when he left him, he was obliged to sue him for his labor, which suit was settled by the testator executing to him his obligation for $400.00; that the plaintiff purchased a piece of land and lived apart from the testator; that afterwards, when he had grown very decrepit and old and altogether unable to labor on his farm or take care of it, and his farm had gone into great dilapidation and decay, and he was wholly without means or money, to have any work or labor done on the farm, and that at the request of said testator he sold his own land and with the proceeds thereof again moved on the testator's farm and by his labor and means put the farm in saleable condition.

The answer of the executor expressly admits, that plaintiff had previously lived on the farm, and that he again returned to it in 1872, ten years after he had left it in 1862. That, when he returned, the fields were grown up with

"grubs" and briers, the fences had gone down, and the buildings were almost uninhabitable, appears from the testimony of many of the witnesses. That the dwelling was repaired, the fields cleaned up, the fences rebuilt, the stones gathered up and removed from some of the fields; that other lands had been cleared, the fields cultivated, some had been sown in timothy and clover, and that all these improvements had been made by the plaintiff, in person, and by assistants hired and paid by him out of his own means; that he had paid many of the testator's debts, for his boarding and taxes, and had advanced from time to time to him sums of money amounting in the aggregate to $132.33; that the testator during all this time was destitute of money, and that as often as the plaintiff raised crops of grain upon the testator's farm he paid him in kind one-third of all he raised which was the usual rent paid for the use of land in that neighborhood; and that these improvements made by the plaintiff were reasonably worth the several amounts allowed by the commissioner,—in our opinion, clearly appears from the evidence returned with his report.

There is of course some conflict in the testimony of the witnesses in regard to the value of the services rendered and of the improvements made upon the farm, some placing a very high and others a very low value on them; but it seems to us, that the values adopted and reported by the commissioner are as nearly correct, as they could be stated; and it is very certain that there are no such discrepancies between his findings and the testimony, as would warrant us in setting them aside, especially when the same has been approved by the circuit court. (*Handy* v. *Scott*, 26 W. Va. 710; *Yoke* v. *Smith*, 27 W. Va. 639).

These circumstances, commencing in 1872 and continuing until the testator's death in 1878, coupled with the fact, that the testator was required to pay the plaintiff for his work and labor performed before 1862 without any expenditure of money excludes the idea, that the plaintiff for a period of six years should devote all his own labor and that of his family and a large proportion of his own means and money to the testator's farm without having in view, at the time the work was done and the money expended, a pecuniary compensa-

tion therefor.  To reach a different conclusion, we must assume, that the testator was a monster of injustice, and the plaintiff destitute of all sense of duty to his famliy and himself.

From these circumstances the commissioner was fully warranted in reaching the conclusion, that for these services rendered, improvements made and money paid, laid out and expended, the plaintiff was entitled to be paid the amounts reported in his favor.  We are therefore further of opinion, that there is no error in the decree of the circuit court rendered herein on December 10, 1883, and the same is affirmed with costs and damages according to law.

AFFIRMED.