# CHARLESTON.

McGLAUGHLIN *et al.* v. McGLAUGHLIN'S LEGATEES *et al.*

Submitted January 27, 1897—Decided March 31, 1897.

1. EXECUTORS—*Legacies—Refunding Bond—Devastavit.*

    An executor who exhausts the personal estate of his testator in paying specific legacies without taking a refunding bond, will, as to the creditors of said testator, be considered as having committed a *devastavit*, whether he had notice of the debts due such creditors at the time he paid such legacies or not. (p. 239.)

2. EXECUTORS—*Death of Executor—Parties.*

    Where an executor has died after partially administering the estate of his decedent, and a suit is brought to recover a claim against said estate simply, no defendant is necessary, except the personal representative. (p. 240.)

3    EXECUTORS—*Executor's Accounts—Commissions.*

An executor who has failed to comply with the require-
ments of section 7 of chapter 87 of the Code, so far as the
same requires him to lay his account of receipts for any year,
within six months after its expiration, before a commissioner,
shall have no compensation for his services during said year.
(p. 241.)

4.    WILLS—*Wife—Election.*

When any provision for a wife is made in her husband's
will, unless, within one year from the time of the admission
of said will to probate, she renounces such provision, as pro-
vided in section 11 of chapter 78 of the Code, she shall have
no more of such estate than is given her by the will.    (p. 242.)

5.    EXECUTORS—*Creditors' Suits—Refunding Bond.*

An executor cannot defend himself against the suit of a
creditor by showing that before he had notice of the plain-
tiff's demand he paid over the assets to the legatees of the
testator, unless he took and filed a refunding bond as re-
quired by law.    (p. 239.)

6.    WILLS—*Legacies—Real Estate.*

A will which contains the following clause: "I desire that
all my just debts be paid out of my estate as soon after my
decease as convenient," does not thereby create a charge
upon the testator's real estate.    Real estate is not chargeable
with pecunary legacies unless the intention so to charge is
expressed in the will, or such intention appears by implica-
tion.    (p. 239.)

Appeal from Circuit Court, Pocahontas county.

Petition by Hugh P. McGlaughlin and others against
David McGlaughlin, executor of the will of Hugh Mc-
Glauglin, deceased, and others. From the decree ren-
dered, Uriah Hevener, administrator of the estate of
David McGlaughlin, deceased, appeals.

*Modified.*

H. S. RUCKER, for appellant.

R. S. TURK, for appellees.

ENGLISH, PRESIDENT:

This was a suit in equity brought by Hugh P. McGlaugh-
lin, Muscoe H. Corbett, and William Skeen against David
McGlaughlin, executor of the last will and testament of
Hugh McGlaughlin, deceased, Elizabeth McGlaughlin, his
widow, and others, grandchildren, devisees, and legatees

of said Hugh McGlaughlin, deceased, in the Circuit Court of Pocahontas county. The plaintiffs in their bill allege that on the 8th day of March, 1866, said Hugh McGlaughlin made and published his last will and testament, which will was admitted to probate on the 14th day of May in the same year, and proceeds to set forth in detail the various bequests and devises contained in said will; that the plaintiff, Muscoe H. Corbett is the assignee of one hundred and twenty-five dollars bequeathed to John A. McGlaughlin, which was assigned to him on the 22nd day of March, 1878; that David McGlaughlin, the executor named in said will, qualified as such some time in the year 1866; that on the 6th day of June, 1868, said executor made an *ex parte* settlement of his accounts as such, and was found to be indebted to the estate in the sum of forty-five dollars and eighty-seven cents principal and three dollars and sixty-one cents interest; that on the 1st of June, 1873, said executor made another *ex parte* settlement of his account, and was found due the estate forty-three dollars and and eighty-seven cents, and on the 18th of February, 1878, he made another settlement, and was found due the estate forty-three dollars and eighty-nine cents principal, and thirteen dollars and forty-six cents interest, and on the 16th of October, 1883, he made another settlement, by which he was found indebted to the estate seventy-one dollars and twenty-five cents, which he paid on debts due the complainants McGlaughlin and Corbett, and nothing was left to pay any other debts; that said testatator was indebted to complainants McGlaughlin and Corbett, and that on the 5th day of September, 1867, the complainant Hugh P. McGlaughlin obtained a judgment against said executor for one hundred dollars with interest from the the 15th day of September, 1866, till paid, and the costs, upon which judgment the executor made some payments, but leaving a balance unpaid; that the plaintiff Muscoe H. Corbett obtained a judgment on the same day for the same amount, with like interest and costs, upon which judgments some payments have been made, but leaving a balance still due and unpaid thereon; that the plaintiff William Skeen obtained a judgment upon a bond executed for borrowed money against the executor on the 2d day of May, 1877, for three hundred and fifty-seven

dollars [and fifty-eight cents, with interest from that date till paid, and nine dollars and ninety cents costs, upon which judgment said executor failed to make any payment, and the whole amount is still due and unpaid, copies of which judgments were exhibited; that the testator's widow still lives, and was made a party to the bill; and that John E. McGlaughlin and Margaret Hogsett were infants. It is further alleged that the executor did not sell any of the personal property willed to the widow or to the plaintiffs McGlaughlin and Corbett, but handed it over to the legatees, and as a consequence there is a deficiency of assets for the payment of debts, and a resort must be had to the realty, if the personalty was not responsible. Complainants ask the court to construe testator's will in the light of the law, and as, in the event of a deficiency of assets, testator failed to designate what property was to be sold for payment of debts, that the court may judicially settle the question, and render such decree as may be just and equitable, and enable them to collect their debts; that a settlement of the accounts of the executor before a commissioner of the court might be decreed, creditors (if any other than complainants) convened, and required to prove their debts, and an account of debts be taken and reported by the commissioner, an account of the real estate of which testator died seised, the value and rental value thereof taken and reported; that, in the event the rents will pay complainants' debts within five years, said lands be decreed to be rented for that purpose, and, if said land will not rent for a sum sufficient to pay within five years, that the lands liable for the payment of complainants' debts be decreed to be sold for the payment of the same.

Thomas H. McGlaughlin and others, grandchildren of the testator, demurred to the plaintiff's bill, and for answer say that by the terms of said testator's will they are to receive equally the proceeds of the sale of said testator's lands when sold according to the terms of the will; that they know nothing of the pretended debts alleged to be due the plaintiffs by or from their grandfather's estate, but, if any debts ever existed, they are now barred by the statute of limitations, and they rely upon and plead the said statute to all three of said pretended debts, and deny their validity. They further allege that the judg-

ments set forth against the executor in the plaintiff's bill are not *prima facie* evidence of the justness of any claim on the part of the plaintiffs, or either of them, against respondents, and that such judgments against the executor do not and have not stopped the statute of limitations as against respondents; that the claims of H. P. McGlaughlin and M. H. Corbett are identical, and are open accounts, dated in 1866, for work done on the decedent's farm, and are for one hundred dollars each, copies of which accounts are exhibited with said answer; that on these accounts actions were instituted on the 7th day of February, 1867, against the executor, and judgment obtained thereon against said executor in their favor on the 5th day of September, 1867; that the judgment of the plaintiff William Skeen purports to have been obtained on a writing obligatory of Hugh McGlaughlin to him for one hundred and seventy-five dollars, dated and due the 3d day of February, 1854, and an attested copy of the declaration of said Skeen filed against the executor was exhibited with said answer; that said judgment was not *prima facie* evidence of the justness of said pretended debt as against respondents, and did not stop the statute of limitations as to them, and said obligation, if it ever had any legal existence, was long since barred by the statute as to them, and they expressly pleaded and relied upon said statute.

And they further allege that it appears from the appraisement bill that Hugh McGlaughlin left a large amount of personal property which should have been applied in payment of his debts, and they pray the dismissal of the plaintiffs' suit. The defendants also filed an amended answer, in which they allege that personal property of the value of eight hundred and ninety-seven dollars and seventy-five cents came into the hands of said David McGlaughlin, the executor, of which amount of property he only sold four hundred and two dollars worth, and that he collected various bonds, as shown by his settlement, amounting to nearly or quite eight hundred dollars more, naming the parties from whom said collections were made, some of which money he paid out upon a number of small claims presented to him by various persons, as appears from the various settlements made by said executor of his accounts, none of which claims were ever proven in such manner as

made it proper and right for said executor to pay them; that the amount of personalty which came into the hands of said executor was amply sufficient to have more than paid all of the just debts of the testator and the pretended claims of plaintiffs, but instead of so doing he paid it out to the devisees and legatees and the testator's widow; that he took no refunding bonds from the legatees, and has made himself liable to the extent of the personal property which came into his hands, and that it would be inequitable and unjust to shift the responsibility from the personal to the real estate, inasmuch as the said executor is solvent, and the debts should be charged to him, since he has wasted and misapplied the fund liable for said debts; and that Hugh McGlaughlin and M. H. Corbett can not claim anything on their unjust demands because they have received the very property which should go to the payment of just debts. David McGlaughlin, executor of the last will and testament of Hugh McGlaughlin, deceased, also answered the plaintiff's bill, in which answer he claims that he made his proper settlements, and accounted for and paid out properly all assets which came into his hands as such executor; that no considerable amount of personalty came into his hands, the same having been disposed of by the testator in specific legicies, which were turned over to the parties entitled, he being advised that, the testator having charged the land with the payment of his debts, the same would become assets in the hands of the executor for payment of said debts, and he avers that the remainder, after the life estate of the widow Elizabeth McGlauglin, and the two-years possession of the land as disposed of in testator's will, should be regarded by a court of equity as assets in the hands of the executor, and as such should be sold for the payment of the debts in the plaintiff's bill mentioned. He claims that he has properly paid out all funds that came into his hands as executor, and has made proper settlements before commissioners appointed by the court; that these settlements were approved, confirmed, and ordered to be recorded by the court; and prays that the remainder in Hugh McGlaughlin's home place be sold, and the proceeds applied to the payment of the unpaid debts, and says there was nothing in the bill or any part of the proceedings of

the cause surcharging and falsifying the settlements made by him. as executor, and that, in the absence of said allegations, said accounts and *ex parte* settlements are presumed correct.

Now, the testator departed this life between March and May, 1866, and the bill in this cause was not filed until May, 1885, about .nineteen years thereafter. David McGlaughlin, the executor, qualified as such between March and May, 1866, and made several *ex parte* settlements, which were duly confirmed by the court. The defendants demurred to the plaintiffs' bill, and relied on the statute of limitations, and we have seen, by the exhibits filed with their answer, showed that the claims upon which the judgments asserted in their bill were founded were not of such character as to prevent them from being barred by the statute of limitations. Without passing upon the demurrer and the plea of the statute of limitations, the court referred the cause to a commissioner, who returned a report, which was not confirmed, and exceptions were indorsed thereon by the defendants; and the cause was referred to another commissioner, who filed a report, which was never confirmed. The defendants then filed an amended answer, surcharging and falsifying the *ex parte* settlements of the executor. If the cause had terminated at this point, I am of opinion the plaintiffs' bill should have been dismissed, as the claims upon which the bill was predicated were clearly barred by the statute of limitations, and the demurrer should have been sustained. On the 7th day of April, 1886, however, H. M. Lockridge filed his petition. in said cause, representing that on the 30th day of December, 1852, George B. Moffett, as principal, with E. Campbell, Hugh McGlaughlin, and James T. Lockridge, sureties, executed their bond to William Skeen, executor of Henry M. Moffett, deceased, for the sum of one thousand and five hundred dollars; that George B. Moffett and E. Campbell were utterly insolvent, and that said Hugh McGlaughlin was dead, and said Skeen instituted a suit on said bond in the circuit court of Pocahontas county, and in June, 1869, a judgment was rendered against said George B. Moffett and James T. Lockridge, the said E. Campbell being then a non-resident of the state and insolvent, and said Hugh McGlaughlin being dead;

that a portion of said judgment by said George B. Moffett was paid to said Skeen, executor, *etc.*, and the residue thereof, to wit, two thousand seven hundred and forty-six dollars and eighty cents, was paid on the 6th day of January, 1886, by said James T. Lockridge as surety to your petitioner H. M. Lockridge, who was assignee of Isaac Moore, who was assignee of said William Skeen; that one-half of this debt, to wit, one thousand three hundred and seventy-three dollars and forty cents, as of January 6, 1886, was due from the estate of said Hugh McGlaughlin to said James T. Lockridge or his assignees; that seven-tenths of said sum of one thousand three hundred and seventy-three dollars and forty cents is now due to your petitioner H. M. Lockridge, the same having been regularly assigned to him, and the residue, to wit, three-tenths, was due your petitioner Lanty Lockridge, the same having been regularly assigned to him.

The petitioners then further represent that a creditors' bill in the name of H. P. McGlaughlin and others (being the original of which we have been speaking), the object of which was to convene the creditors of said Hugh McGlaughlin, ascertain his debts, and sell his lands to satisfy the same, was then pending in the circuit court of said county, and the petitioners had had their claim reported by the commissioner in said cause, and they filed this their petition in said cause, and pray that they may be made parties thereto, designating those they desire made defendants to their petition, consisting of the children, grandchildren, devisees, and legatees of said Hugh McGlaughlin, and praying that the land of said Hugh McGlaughlin might be sold to satisfy his debts, and that in any decree which might be rendered in said cause their interests might be fully protected.

The defendants filed their answer to said petition, attacking the settlements made by the executor of Hugh McGlaughlin, deceased, seeking to surcharge and falsify the same, pointing out various errors which they claim to exist therein, and insisting that the personal property which came into the hands of said executor, and which was the primary fund for the payment of debts, should be charged against him, in so far as he has paid the same in legacies, in violation of law, and in so far as he has not been charged therewith.

The petitioners further allege that, if a proper accounting and handling of the estate had been made by said executor, there would have been ample funds. in his hands to have paid off all the debts claimed to be due from the estate, even if the supposed claim of the petitioners was valid and subsisting. They deny the existence of any claims or liability on the part of Hugh McGaughlin's estate to James T. Lockridge or his assignees, H. M. and Lanty Lockridge, and allege that, if there ever might have been such liability, the claim has long since been barred by the statute of limitations. They require the fullest proof thereof, and allege that Hugh McGlaughlin died in the spring of 1866, and his executor qualified a short time thereafter, making nearly twenty years that had elapsed since the qualification of said executor; and that neither James T. Lockridge nor his assignees can occupy any better or higher position as to this debt than William Skeen, the original obligee, and as he could, under no circumstances, collect it, or any part thereof, from the estate of Hugh McGlaughlin, a *fortiori* cannot Lockridge's assignees.

They deny that George B. Moffett, the principal in said bond, was insolvent, and allege that he was the owner of a life estate in a large and valuable tract of land situated in said county, and that said life estate is still liable for the payment of said debt; that the said lands are very fertile, and if rented out would in a few years pay off said debt, and that it was the duty of J. T. Lockridge, instead of paying off said debt due from George B. Moffett, the principal, to have required said Skeen or his assignees to have first rented these lands and exhausted the principal before requiring him to pay the said .debt; that the said Lockridge, being in possession of these facts, and failing to avail himself of them, was then estopped from making a co-surety contribute, even if it was right and proper, under the circumstances, to do so. They pray that the accounts of the said David McGlaughlin, executor, may be corrected as suggested in said answer; that he be charged with all personal property turned over by him or paid upon legacies; that the life estate of the principal debtor, George B. Moffett, in the lands of his wife, mentioned in said answer, be rented or sold as might seem best to the court,

and the proceeds applied to the repayment to James T. Lockridge or his assignees of the money he, as surety, has paid for said George B. Moffett, and that H. M. Lockridge and Lanty Lockridge be enjoined, and forever prohibited, from further proceeding against the estate of the defendants in the land of Hugh McGlaughlin acquired under said will.

On the 19th day of October, 1866, the cause was referred to L. M. McClintic, one of the commissioners of the court, who made a report in which he found in favor of part of the legatees as to the statute of limitations and the legatee's *devastavit*, finding the executor in debt to the estate one thousand one hundred and forty-three dollars and thirty-one cents. Before this report was finally acted upon it was brought to the attention of the court that David McGlaughlin, executor, *etc.*, was insane, and so much of the decree as was a personal decree against said executor was set aside, and a committee was appointed for said insane person. However, the real estate of Hugh McGlaughlin, deceased, was directed to be rented out. On the 16th of October, 1887, said cause was recommitted to Commissioner McClintic, giving special directions as to Lockridge debt, and said commissioner made his report finding a *devastavit* of one thousand two hundred and eighty-nine dollars and eighty-five cents. Subsequently said Commissioner McClintic made another report, finding the *devastavit*, after crediting certain sums thereon, to be seven hundred and one dollars as of the 18th day of June, 1890, which report was confirmed by decree rendered on the 18th day of October, 1894, fixing the *devastavit* at seven hundred and one dollars, and from the decree confirming said report this appeal was taken.

The principal question we are called on to determine in this case arises upon exceptions to the last report made by Commissioner L. M. McClintic. By said report it will be perceived that said commissioner ascertained the gross sum of said executor's *devastavit* to be one thousand two hundred and sixty-nine dollars and eighty-five cents, which amount was reduced to the sum of seven hundred and one dollars by allowing said executor credit for forty dollars and twenty-eight cents commissions and interest thereon to June, 1890, making ninety-five dollars and eighty-two

cents; also by allowing him credit for the the judgment of H. P. McGlaughlin, with interest to June 18, 1890, amounting to one hundred and sixty-five dollars and ninety-eight cents; also by a judgment of M. H. Corbett, which, with interest to June 18, 1890, amounted to one hundred and sixty-eight dollars and nine cents; and by two hundred dollars, the amount of the estate the widow might have taken at the sale. The legatees, by their attorney, excepted to said report so far as it credited the executor with ninety-five dollars and eighty-two cents commissions, and with said judgments in favor of H. P. McGlaughlin and M. H. Corbett, and with the two hundred' dollars which the widow might have claimed at the sale; also as to the special statement made, at the instance of the executor's attorney, finding the amount of William Skeen's judgment. The administrator of David McGlaughlin, deceased, also excepted to said report: (1) Because the specific legacies to H. P. McGlaughlin, M. H. Corbett, and Elizabeth McGlaughlin should have been allowed to David McGlaughlin as a credit upon his indebtedness to Hugh McGlaughlin's estate, because there were no debts then existing upon the payment of which there was not ample means in his hands after paying over said legacies. (2) The judgment of Skeen (if there ever was any such) was a personal judgment against David McGlaughlin, and not against him, to be paid out of his decedent's estate. (3) As a personal judgment against said David McGlaughlin, the same was barred. See copies of judgment and execution by the former report. (4) Said Skeen never presented his claim for allowance against the estate of H. P. McGlaughlin, deceased, although notice was duly published by the executor. (5) The legacy having been paid Elizabeth McGlaughlin, instead of the two hundred dollars allowed her by law if she was deprived of the legacy, the executor should be credited in settlement with the two hundred dollars as of the date at which he paid her the legacy, in all equity. (6) There was no evidence of *devastavit* before the commissioner upon which to base his principal statement or first statement, and it appearing that the executor simply followed the intention of the testator, and his settlements having been regularly made by an *ex parte* commissioner, the special statement should be

adopted and this cause dismissed. (7) The heirs of Hugh McGlaughlin are in no condition to claim a *devastavit*, which is claimed to arise by the executor having paid over specific personal legacies of a perishable nature. Equality between them is equity and they cannot complain.

The only decree complained of in the assignment of errors is the final decree rendered on the 18th day of October, 1894, which heard the cause on the report of Commissioner McClintic filed on the 14th of June, 1890, with the above exceptions indorsed thereon, confirming said report so far as it found the *devastavit* committed by the executor of Hugh McGlaughlin, deceased, to be seven hundred and one dollars, as of the 18th of June, 1890, which sum, with interest thereon to the date of the decree, amounted to eight hundred and thirty-three dollars and twenty-six cents, and appointed a special receiver, who was decreed to recover of the estate of David McGlaughlin, deceased, to be levied of the goods and chattels of said decedent in the hands of his administrator, the sum of eight hundred and thirty-three dollars and twenty-six cents, with interest thereon from the 17th day of October, 1894, till paid, and costs; and said special receiver was thereby empowered to take such legal steps as he might deem necessary, by execution or otherwise, to collect the money aforesaid, directing the same to be brought into court to be disbursed; and in the event the said special receiver should be unable to collect said sum out of the personal estate of the said David McGlaughlin in the hands of, or which should be in the hands of, the administrator of David McGlaughlin, then he might proceed to enforce the collection of said claim against the real estate of said David McGlaughlin in the hands of his heirs.

The first error assigned and relied upon by the appellant administrator of David McGlaughlin, deceased, is as follows: It was error to decree in favor of Hugh McGlaughlin's grandchildren against the estate of the executor, David McGlaughlin, eight hundred and thirty-three dollars and twenty-six cents, based upon a *devastavit* consisting of payments of legacies prematurely to the widow Elizabeth McGlaughlin, M. H. Corbett, and Hugh P. McGlaughlin. The only question arising under this assignment of error is whether the executor, David McGlaugh-

lin, committed a *devastavit* in making the payments mentioned in said assignment of errors.   As to what constitutes *devastavit*, 2 Lomax, Ex'rs, p. 457, thus states the law : "An executor or administrator, is subjected by law to liability personally for various acts of misconduct amounting to a violation or neglect of duty, and which is called in law a *'devastavit'* or wasting of the assets.   In law a *devastavit* is a mismanagement of the estate and effects of the deceased, in the squandering and misapplying the assets contrary to the trust and confidence reposed in the executors or administrators, for which they shall answer out of their own pockets as far they have or might have had assets of the deceased.   *   *   *   It is the general duty of the executor to apply the legal personal assets of the testator to the satisfaction of the creditors before he satisfies any of the legatees."   In the same volume (page 208) it is said : "The payment of a legacy before a debt, if the assets afterward prove insufficient, will in many instances involve his personal responsibility to the creditor, and subject his own estate to the charge, it being a *devastavit* to pay or assent to legacies before the payment of debts." On this proposition the law is stated as follows in the case of *Kippen* v. *Carr's Ex'r*, 4 Munf. 119 :   "An executor cannot defend himself against the suit of a creditor by showing that before he had notice of the plaintiff's demand he paid over the assets to the legatees of the testator."  So, also, in the case of *Cookus* v. *Peyton's Ex'r*, 1 Grat. 432 (section 4 of the syllabus), it is held that "an administrator paying away the assets of the estate to distributees, without notice of debts or liabilities of his intestate, must account to creditors of the amount so paid away, with interest."   Said executor had it in his power, under section 30 of chapter 87 of the Code, to have protected himself and the creditors of said estate by taking a refunding bond. Said section provides that "if any personal representative shall pay any legacy given by the will, or distribute any of the estate of his decedent, and there be filed in said clerk's office a proper refunding bond for what is so paid or distributed, with a securety therein sufficient at the time of taking it, such personal representative shall not on account of what is so paid or distributed, be personally liable for any debt or demand against the decedent, whether

it be of record or not, unless within one year from his qualification, or before such payment or distribution, he shall have notice of such debt or demand." And said section proceeds to provide for suits by creditors upon such refunding bond. It was clearly the duty of the executor, under this section of the Code, to have taken a refunding bond, and in this manner to have protected himself and the creditors of said estate. Upon this question see the case of *Lewis* v. *Overby's Adm'r*, 31 Grat. 602 (point 4 of the syllabus), where it is held that the "executors, having distributed the personal property of a decedent in his possession at his death without taking a refunding bond, are responsible to the creditor, though they knew of no debt due from said decedent."

A material question to consider in this case is whether the debts of the testator were or not made a charge upon the real estate of which he died seised and possessed. The language used by the testator. "I desire that all my just debts be paid out of my estate as soon after my decease as may be convenient," are almost identical with those used in the case of *Gaw* v. *Huffman*, 12 Grat. 628. In that case the testator said: "It is my will and desire that my just debts be paid out of my estate by my executor hereinafter mentioned;" and it was held that the debts were not thereby charged upon the testator's real estate. Neither does it appear in any manner by implication in this case that it was the intention of the testator to charge his land with the payment of his debts, but the contrary seems to have been his intent: because after the death of his wife, and after the two years his nephews Hugh P. McGlaughlin and Muscoe H. Corbett were to have the use of the farm, he directed it to be sold, and that his son John A. McGlaughlin receive one hundred and twenty-five dollars out of the proceeds, his daughter Mary Ann Hogsett receive one hundred dollars of the proceeds, and the remainder thereof be divided between his grandchildren then living. In the case of *Thomas* v. *Rector*, 23 W. Va. 26 (first point of syllabus), it was held that "real estate is not chargeable with pecuniary legacies unless the intention so to charge is expressed in the will, or such intention appears by implication." The payment of the legacies prematurely to the widow Elizabeth Mc-

Glaughlin and to H. M. Corbett and Hugh McGlaughlin without requiring a refunding bond must be considered as a *devastavit*. The grandchildren were entitled to have the debts paid out of the personalty, and the real estate devised to them protected from the debts of the testator, and for this reason I regard the second assignment of error not well taken.

The third assignment of error claims that it was error to decree affirmative relief against the estate of the defendant David McGlaughlin in favor of his co-defendants, the grandchildren of the testator, upon the pleadings in this cause. This assignment, however, can not be sustained when the answer of said grandchildren, in response to the petition filed by H. M. Lockridge and Lanty Lockridge, is examined and considered, for the reason that the claims of said grandchildren and their contention in this cause are fully pleaded and relied on.

The fourth assignment of error claims that it was error to decree anything against the estate of David McGlaughlin, deceased, without first making his children parties thereto. Upon this question see *Jones* v. *Reid's Adm'r*, 12 W. Va. 350 (fourth point of the syllabus), where it is said that, "in a suit to recover a claim against an estate simply, no defendant is necessary or proper except the personal representative."

In the fifth assignment of error it was claimed to be error to over-rule the exceptions of the appellants to the report of Commissioner McClintic, and to sustain the exception of the grandchildren thereto. The exceptions indorsed by appellants on said report have already been set forth and considered in this opinion, and, for the reasons above stated, were properly overruled by the court.

The sixth assignment of error, to wit: that "it was error to decree anything in favor of the grandchildren now living, because only those grandchildren living at the date of the death of the testator's widow can take under the terms of the will, and the widow is still living, and the particular fund out of which the legacies of the grandchildren are carved failing, the legacies failed," is sufficiently disposed of by referring to the decree complained of, from which it is manifest that nothing had been decreed thereby in favor of said grandchildren, said decree merely having deter-

mined the amount of the *devastavit* committed by the executor, and directing a special receiver to collect the same, without in any manner indicating how it shall be disbursed.

The seventh assignment of error is, that it was error to declare the payment of the legacy to the widow, H. P. McGlaughlin, and M. H. Corbett a *devastavit* so far as the Lockridge debt was concerned, for there was nothing due from the testator's estate, nor anything known of any such claim, until nearly twenty years after such legacies were paid over by the executor. This assignment of error is met by the case of *Lewis* v. *Overby's Adm'r*, 31 Grat. 602 (fourth point of syllabus), above quoted, where it is held that the executors, having distributed the personal property of their testator in his possession at his death without taking a refunding bond, are responsible to the creditor for its value, though they knew of no debt due from said testor; and also by the case of *Cookus* v. *Peyton's Ex'r*, 1 Grat. 432 (fourth point in the syllabus), where it is held that "an administrator paying away the assets of the estate to distributees, without notice of debts or liabilities of his intestate, must account to creditors for the amount so paid away, with interest."

The appellees in their brief make a cross assignment of error, in which they claim that the court erred in the decree complained of in over-ruling their exceptions to Commissioner McClintic's report, which exceptions have been hereinbefore quoted, and in my opinion said exceptions should have been sustained, first, because commissions were improperly allowed to the executor, who had failed to comply with the statute in regard to the settlement of his accounts, which commissions, with the accrued interest thereon to June 18, 1890, amounting to ninety-five dollars and eighty-two cents. The two judgments excepted to—one in favor of M. H. Corbett for one hundred and sixty-eight dollars and nine cents, the other in favor of H. P. McGlaughlin for one hundred and sixty-five dollars and ninety-eight cents—were improperly allowed as credits to said executor upon the amount of his *devastavit*, because the same had been held to be barred by the statute of limitations, and were so barred when paid by said executor, and the two hundred dollars which was allowed as a credit to said executor was improperly allowed, as our statute

(chapter 78, section 11, Code) provides that "when any provision for a wife is made in a husband's will, she may, within one year from the time of the admission of the will to probate, renounce such provision. \* \* \* If such renunciation be made, or if no provision be made for her in the will, she shall have such share of her husband's real and personal estate as she would have had if he had died intestate leaving children; otherwise she shall have no more thereof than is given her by the will." But even if the widow, under the circumstances of this case, had been entitled to retain the two hundred dollars, that fact would not entitle the executor to a credit for that amount. Upon this point see, also, *Cunningham* v. *Cunningham*, 30 W. Va. 600, 5 S. E. 139 (third point of syllabus), where it is held that, if a husband failed to renounce the provisions of a will made in his favor by his deceased wife, his right to a distributive share of her personal estate is barred, and the same rule applies to a widow who fails to renounce the provisions in her favor in her deceased husband's will within the time prescribed by statute. For these reasons my conclusion is that the court erred in overruling the exceptions indorsed on the report of Commissioner McClintic, filed June 18, 1890, by the attorney for the legatees, which exceptions are relied upon in said cross assignment of errors. In this respect the decree complained of should be corrected by charging the executor of said estate with the items mentioned in said last-named exceptions, and in other respects the decree complained of must be affirmed, with costs and damages.

*Modified.*