# CHARLESTON.

S. H. BAILEY, *Executor etc.,* v. VERNON B. HUDKINS *et al., Executors etc.* and JOINT STOCK LAND BANK *v.* S. H. BAILEY, *Consolidated Causes*

## (No. 5869)

Submitted April 19, 1927.   Decided May 3, 1927.

WILLS—*Mere Statement in Will of Testator's Desire to Have Debts Paid is Not Sufficient to Charge Realty Therewith; Intention to Charge Testator's Realty With Debts Must be Clearly Expressed in Will.*

> The mere statement in a will of the desire of the testator that his debts be paid, is not sufficient to charge his real estate with his indebtedness. In order to so charge, the intention must be clearly expressed. Pt. 6, Syl., *McGlaughlin* v. *McGlaughlin's Legatees,* 43 W. Va. 226.

> (Wills, 40 Cyc. pp. 2071, 2073.)

> (NOTE: Parenthetical references by Editors C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Lewis County.

Suit by S. H. Bailey, executor, etc., against Vernon B. Hudkins and others, executors, etc., consolidated with suit by the

Joint Stock Land Bank against S. H. Bailey. From a decree giving the Joint Stock Land Bank a lien on certain land prior to that of decedent's general creditors, S. H. Bailey appeals.

*Modified and affirmed.*

*W. J. Smith,* for appellant.
*Herbert M. Blair,* for appellees.

HATCHER, PRESIDENT:

The will of T. Lee Hudkins was probated August 20, 1921. Vernon, a son, and the wife of the testator were named executors. Among other devises was one to Vernon of a tract estimated to contain 125 acres, but which actually contained 149.3. This tract was a part of the testator's ''Home Farm''.

On December 29, 1923, Vernon borrowed $3000.00 from The Agricultural Joint Stock Land Bank of Charleston, executing a deed of trust on the 149.3 acres to secure the loan. The money was borrowed and the trust deed executed by Vernon in his own right and not as executor.

This suit was brought at July Rules, 1924, by a creditor of the testator, for the purpose of having the estate administered and the real estate sold, the personal property not being sufficient to pay the testator's indebtedness. The lower court gave the lien of the Bank on the 149.3 acres priority over the general creditors of the decedent. The decree below is challenged bcause of two provisions in the will which are as follows: ''FIRST. I desire that all my just debts be paid. TENTH. In the event my creditors, or any of them, shall not be willing to wait the discharge of the debts held by them in the manner and from the sources herein provided, the Executor and Executrix of this will shall have and are hereby expressly given full power and authority to borrow money on the credit of my estate tô pay off such pressing debts and to secure any loans obtained by them for such purpose by deed of trust or mortgage on all of my said real estate   *   *   *''. The sources provided in the will for the discharge of the testator's debts referred to in item ten, were two-thirds of the royalties and rentals from an oil and gas lease on his ''Home Farm'', and

a portion of the profits on his one-half interest in a certain dairy business.

Counsel for the plaintiff contends that items one and ten of the will charge the testator's real property with the payment of his debts, citing *Poindexter* v. *Green,* 6 Leigh 504 and other early Virginia cases. Before the passage of modern statutes impressing the debts of a decedent upon his lands, courts generally, in their anxiety to protect creditors, were accustomed to seize upon words in a will of slight import, as indicating intention to charge debts on real estate. With the enactment of such statutes, the necessity of strained construction ended, and courts now require that the intention to so charge debts be clearly expressed. Woerner, Administration, 3rd. Ed., p. 1707, Sec. 490; 28 R. C. L. p. 302, Sec. 281. ''To render a provision in a will effectual to furnish a greater security than that given by law for the payment of debts in due course of administration, by charging them upon the real estate of the testator, the purpose must quite clearly appear, a mere direction to pay debts out of the property will not suffice.'' *Matter of Powers, Ex.,* 124 N. Y. 361. *Cross* v. *Benson,* 68 Kan. 495; *Cooch* v. *Cooch,* 5 Houston (Del.) 540; *Larson* v. *Curran,* 121 Minn. 104; *Starke* v. *Wilson,* 65 Ala. 576; 40 Cyc. p. 2070-1. Later Virginia decisions have rejected the construction of *Poindexter* v. *Green.* See *Gaw* v. *Huffman,* 12 Gratt. 678; *Leavell* v. *Smith,* 100 Va. 374. That construction has never been followed in this state. ''A will which contains the following clause: 'I desire that all my just debts be paid out of my estate as soon after my decease as convenient', does not thereby create a charge upon the testator's real estate''. *McGlaughlin* v. *McGlaughlin's Legatees,* 43 W. Va. 226.

The provisions in the Hudkins will for the payment of his debts out of certain oil and gas rentals and dairy profits, indicate not only the desire of the testator that his debts be paid in that way, but show that he was straining his resources to the limit to prevent the creditors resorting to his real estate. He evidently believed that his indebtedness could be paid in the manner he provided; but he realized that it would

require several years in which to do so. He anticipated that some of his creditors might not be willing to wait payment. In item ten he makes provision for such creditors. He does not charge his land with their debts, however. He directs his executors to pay them off. True, the executors would have to borrow money for that purpose, but they were to borrow nevertheless and pay off all importunate creditors. The testator evidently thought that his executors could borrow money from some one, who, when secured by a deed of trust on the real estate, would wait payment from the oil and gas royalties and rentals and the dairy profits. Instead of item ten charging the real estate with the debts, it shows plainly that the testator had resourcefully planned to keep the creditors off the real estate.

Under modern construction requiring explicit direction unaided by presumption, to charge real estate with a testator's indebtedness, we must hold that the Hudkins will does not so charge.

The Bank proved by its president-treasurer the amount due on its loan, and that it had no notice whatsoever of any fraudulent intent on the part of Vernon Hudkins at the time the loan was made and the security taken. The record shows that no suit for the administration of the testator's assets had been commenced and no report of the accounts of the testator's representatives, and of the debts and demands against the decedent's estate had been filed in the clerk's office, at the time the deed of trust to secure the Bank was executed. Over two years had elapsed between the probation of the will and the execution of the trust deed.

Counsel for the Bank say that the Bank was warranted in believing that the creditors of decedent were satisfied with the provisions of the will for their payment and that the Bank is entitled to have its lien protected under Sec. 5 of Ch. 86 of the Code. That section is as follows: "Any heir or devisee who shall sell and convey any real estate which by this chapter is made assets, shall be liable to those entitled to be paid out of the said assets, for the value thereof, with interest; in such

case the estate conveyed shall not be liable, if at the time of the conveyance the purchaser shall have no notice of the fraudulent intent on the part of the grantor, and no suit shall have been commenced for the administration of the said assets, nor any report have been filed, as aforesaid, of the debts and demands of those entitled.''

Under the decisions of this court, ''A grantee in a deed of trust to secure a debt is a purchaser for valuable consideration.'' *Duncan* v. *Custard,* 24 W. Va. 730; *Douglas Mdse. Co.* v. *Laird,* 37 W. Va. 686.

We therefore hold that the estate conveyed the trustee of the Bank by Vernon Hudkins is exempted by the statute from liability to the creditors of the testator, except that the creditors are entitled to two-thirds of the oil and gas royalties and rentals therefrom. Vernon took the 149.3 acres subject to the rights of the creditors of his father to two-thirds of those royalties and rentals. The Bank took the tract subject to the same rights.

Complaint is made by counsel for plaintiff because of a decree entered Nov. 20, 1923, which permitted the filing of a bill of review, and set aside a prior order of the court which had directed a sale of the property. The decree of Nov. 20, 1925, was final in regard to the matters complained of. It has never been appealed from. We cannot consider it now.

The decree of the lower court will be modified relative to two-thirds of the oil and gas rentals and royalties on the Vernon Hudkins tract in the manner above indicated, and as modified, will be affirmed.

*Modified and affirmed.*