## CHARLESTON.

THE CITIZENS STATE BANK OF RIPLEY, *et als. v.* D. W. Mc-KOWN, *Executor et als.*

(No. 6298)

Submitted January 15, 1929.   Decided January 29, 1929.

*I. P. Whitehead, M. C. Archer* and *William Beasley,* for appellant.

*T. J. Sayre, K. K. Hyre,* and *Burton Crow,* for appellees.

WOODS, PRESIDENT:

A creditors' suit was instituted to subject the real estate of C. H. McKown, deceased, to the payment of his indebtedness. The bill alleges, inter alia, that a $5,000.00 mortgage executed almost six months after the death of C. H. McKown, by his sole devisee, David W. McKown, to the Federal Land Bank Company, was void and inoperative against the debts and claims of the general creditors, and asks that the debts and claims of the general creditors of said C. H. McKown take priority over the said mortgage, and that the real estate be sold for payment of decedent's debts.

The cause was referred to a commissioner, who found that the mortgage had priority over the general creditors. Numerous exceptions were taken to the report. While the

lower court in effect held that the will constituted a charge upon the real estate for the payment of decedent's debts, yet in view of the fact that the $5,000.00 borrowed by D. W. McKown was applied on the indebtedness of said C. H. McKown, it decreed that the general creditors' claims against C. H. McKown, and the $5,000.00 mortgage were of the same standing and dignity, and should share pro ráta in the distribution of said estate.

The appellant, Federal Land Bank Company, contends that the will did not charge the real estate, and that the transfer of the real estate under the mortgage by virtue of section 5, Chapter 86, Code, cannot be successfully attacked by creditors. The appellees, however, in addition to asserting that the language of the will creates a charge, contend that the loan by the Federal Land Bank Company was prematurely made; that the time had not yet expired within which period the administrator was empowered to sue, much less had the time arrived when any creditor could have asserted his right of suit.

Because the common law afforded little protection to the creditor in his effort to subject the land of his deceased debtor to the payment of his claim, courts were quick to seize on any words in the will which even by implication might be construed as an intention on the part of the testator to charge his real estate. However, with the enactment of statutes making the real estate liable for debts, the necessity of strained construction ended, and courts now require that the intention to so charge debts be clearly expressed. Woerner, Administration (3rd ed.) p. 1707, sec. 490; *Bailey v. Hudkins,* 103 W. Va. 556; *McGlaughlin v. McGlaughlin,* 43 W. Va. 226. In *Bailey v. Hudkins, supra,* the rule is stated: "The mere statement in a will of the desire of the testator that his debts be paid, is not sufficient to charge his real estate with his indebtedness. In order to so charge, the intention must be clearly expressed." In other words, there must be clear evidence of such an intent in the will; the intention may not be presumed merely from the use of formal words or the presence of commonly employed phrases. 29 R. C. L. 302; 40 Cyc. 2070-1. So, if a testator in this state

intends to furnish a greater security to his creditors than is afforded by section 3, Chapter 86, Code, making all real estate "assets for the payment of the decedent's debts," etc., he must use some expression in his will showing in explicit terms, unaided by presumption, his intention so to do. The will in the instant case reads: "I desire and direct that all my just debts, funeral expenses, with costs of administration be paid, after payment thereof, the balance of all real and personal property owned and possessed by me, or to which I may be legally entitled wherever situated, I give, bequeath and devise to my son, Daniel W. McKown, of Ripley, West Virginia. I nominate and appoint said Daniel W. McKown, my executor of this will, and request and require that no security or bond of any kind shall be required of him as such executor."

Appellees, while conceding that the expression "I desire and direct that my just debts * * * be paid" is not sufficient in itself, under *Bailey* v. *Hudkins, supra,* and *McGlaughlin* v. *McGlaughlin, supra,* to charge the real estate, contend that the presence in connection therewith of the words "after payment thereof, the balance," etc., clearly expresses an intention to so charge. True, the word "balance" means after excluding what has been before given. It introduces a residuary clause under which D. W. McKown takes the remainder, or residuum, of the estate. Whatever may be its effect in other residuary clauses, in the instant case it cannot import a charge upon the realty, because the testator contemplates by the residuary clause itself that personalty as well as realty is to pass thereunder. If testator desires to charge his real estate, he must expressly so state. We are not unmindful, however, of the rule that the intention of the devisor is to be sought out by all possible investigation, and observed with strictness, however untechnically expressed. This rule is one of construction, adopted from a very early period, and it has uniformerly been sustained in the courts. But the trend of the modern cases, for reasons hereinbefore explained, is, in applying such rule, to avoid constructing an intention from words which have acquired, from constant use, a mere formal or customary character, and for that reason have ceased to

have great import as expressions of the willmaker. The words employed in the will under review express in effect the usual common provisions in a will to pay the debts and provide for a disposition of the residuum of the estate after this is done. It therefore does not contain express directions to charge the real estate for the debts of the testator, nor is the intention thus to charge it plainly implied from the whole will taken together. This is necessary under our decisions.

What is the status of the Federal Land Bank Company's loan? Before entering into a discussion of this phase of the case it will be necessary to keep in mind the following statutory provisions of Chapter 86 of the Code:

> Section 3. "All real estate of any person who may hereafter die, as to which he may die intestate, or which, though he die intestate, shall not by his will be charged with or devised subject to the payment of his debts, or which may remain after satisfying the debts with which it may be so charged, or subject to which it may be so devised, shall be assets for the payment of the decedent's debts and all lawful demands against his estate, in the order in which the personal estate of a decedent is directed to be applied."

> Section 4. "Such assets, so far as they may be in the hands of the personal representative of the decedent, may be administered by the court in whose clerk's office there is or may be filed a report of the accounts of such representative, and of the debts and demands against the decedent's estate, or they may, in any case, be administered by a court of equity."

> Section 5. "Any heir or devisee who shall sell and convey any real estate which by this chapter is made assets, shall be liable to those entitled to be paid out of the said assets, for the value thereof, with interest; in such case the estate conveyed shall not be liable, if at the time of the conveyance the purchaser shall have no notice of the fraudulent intent on the part of the grantor, and no suit shall have been commenced for the administration of the said assets, nor any report have been filed, as aforesaid, of the debts and demands of those entitled."

Section 7. ''When the personal estate of a decedent is insufficient for the payment of his debts, his executor or administrator may commence and prosecute a suit in equity to subject his real estate to the payment thereof as provided in this chapter. The widow, heirs and devisees, if any, and all the known creditors of the decedent, shall be made defendants in such suit. If such suit be not brought within six months after the qualification of such executor or administrator, any creditor of such decedent, whether he has obtained a judgment at law for his claims or not, may institute and prosecute such suit on behalf of himself and the other creditors of such decedent, in which the personal representative, widow, heirs and devisees, if any, of the decedent shall be made defendants. In every suit under this section any one claiming to be a creditor of the decedent, whether he may have been made a party thereto or not, or whether he may have been served with process therein or not, may present his claims, and upon such presentation, shall be deemed to have been made a party to the suit and to have been served with process therein. And evidence respecting such claim may be taken, and the same may be allowed and paid, in whole or in part, or rejected in the same manner and with the same effect, as if such claimant had been originally made a party and served with process.''

Appellant contends that it stands in the position of a bona fide purchaser, citing section 5, above, as authority. In considering this contention, we must remember that section 3 provides all creditors of a decedent with a sort of statutory lien on the real estate to the extent of their respective claims, providing the personalty is not sufficient to satisfy the same. And then section 7 clothes the personal representative with the sole right of instituting suit within six months after his qualification, thereby precluding the ordinary creditor from bringing suit for the purpose of settling up the estate. *Broderick* v. *Broderick*, 28 W. Va. 378; *Reinhardt* v. *Reinhardt*, 21 W. Va. 76. This rule has not been departed from in our decisions except in a case where the estate was being dissipated. *Poling* v. *Huffman*, 39 W. Va. 320. The fact that

the administrator is given the exclusive right for six months to bring suit to settle up the estate, is reason for assuming that some provision has been made elsewhere for the protection of the creditor. Were this not so, section 3 would lose much of its force, because the administrator would not be in a position to bring suit immediately, and might not believe it necessary until the extent of the estate could be determined. The fact that a right is given under section 3, which was re-enacted into the Code of 1868, at which time section 7 became a material part thereof, some construction must be made which will give meaning to both.

In view of the two last mentioned sections, let us consider section 5 upon which appellant relies. This section permits the devisee to make sale of the real estate, providing the interests of the creditors are taken care of. It makes him personally liable to the creditors; and also leaves the way open to the creditors to go against the real estate, providing the purchaser has not acquired title pursuant to certain other provisions of the same section. ''In such case the estate conveyed shall not be liable, if at the time of the conveyance the purchaser shall have no notice of the fraudulent intent on the part of the grantor, and no suit shall have been commenced for the administration of the said assets, nor any reports have been filed, as aforesaid, of the debts and demands of those entitled.'' The property remains liable if the purchaser has notice of a fraudulent intent on the part of the grantor. But what of the portion of the section, ''and no suit shall have been commenced for the administration of the said assets,'' etc.? This clause imports on its face that someone has a right to bring suit. The creditors, if any, have a right under section 3 to subject the real estate to the payment of their claims, but under section 7 they are not permitted to assert the same for six months after the qualification of the administrator. Since the creditors have been given a right to bring suit, the law would allow them a reasonable time in which to bring the same after said right had accrued. If the devisee had a right to dispose of the property within six months after the qualification of the administrator, without the right of the creditors attached thereto, such rights against the real

estate would be lost. Such a construction of the foregoing statutes would be unthinkable, and to say the least, inequitable. Some states have a definite prescribed time limit validating such alienation, for instance, Virginia, one year; North Carolina, two years; and Pennsylvania and New York, three years. Our sections 3, 4 and 5, Chapter 86, Code, are substantially those of Virginia, but that state does not have our section 7. The Court is of opinion that a purchaser from a devisee, or heir, of real estate of the testator or intestate, buys the real estate under the rule of *caveat emptor*, and, if he buys before the creditors are permitted to assert their rights, he buys subject to their rights. Such holding is in harmony with the principle of general application in the administration of estates in the several states, under varying statutes, to the effect that it is only after the expiration of the time during which the real estate may be subjected to the payment of the debts in the probate court, or suits may be brought by the creditor against the heir, that an alienation by the heir or devisee of his interest in the realty therein, may be valid as against creditors of the decedent. Woerner, Administration, sec. 579.

We are therefore of the opinion that the mortgage, which, under statutes similar to section 5, is considered as a sale by the devisee (*Platt* v. *Platt*, 105 N. Y. 488; *Van Bibber* v. *Reese*, 71 Md. 608; *Neilson* v. *Weber*, 107 Tenn. 161), was executed, subject to the rights of the creditors, of which the Federal Land Bank Company was charged with notice.

Whether or not the Federal Land Bank Company, under the circumstances, should have been permitted to come in and share with the rest of the creditors is not before us, for the appellees in their brief in referring to the court's order stated: "This was right and was equity."

The decree of the circuit court is therefore

*Affirmed.*