# CHARLESTON.

TURK *v.* HEVENER *et al.*

.Decided March 16, 1901.

1. CREDITOR'S BILL—*Devastavit Multifarious.*
   A bill by a creditor of a decedent to settle the estate and the accounts of the administrator, and to charge him with a *devastavit*, and to have a personal decree against the administrator, and to subject lands owned by the decedent at his death, and to follow such lands into the hands of a grantee of the heirs or devisees, and set aside their conveyances to such third party for fraud or other legal ground, is not multifarious. (p. 207).

2. ADMINISTRATOR—*Expenses—Good Faith.*
   An administrator is allowed his legal costs and reasonable counsel fees expended in defending a litigable demand against the estate, whether in the circuit or appellate court, if he acted in good faith in making such defense. (p. 209).

Appeal from Circuit Court, Pocahontas County.

Suit by R. S. Turk, special receiver, against Uriah Hevener and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

H. S. RUCKER, *for Appellants.*

R. S. TURK, *in pro. per.*

BRANNON, PRESIDENT:

In a suit in Pocahontas County brought for the settlement of the estate of Hugh McGlaughlin, deceased, a decree was made fixing a liability on David McGlaughlin as executor of said decedent because of a *devastavit* committed by the executor. The case came to this Court, and the decree was not merely affirmed, but a larger amount of liability was fixed by the decision on David McGlaughlin. See 43 W. Va. 226. Upon the return of the case to the circuit court a decree was pronounced against Uriah Hevener, as administrator c. t. a. of David McGlaughlin, deceased, for one thousand nine hundred and fifty-six dollars and fifty-three cents, in favor of R. S. Turk, special receiver appointed by the decree to collect and dispose of the fund. Later Turk brought the present chancery suit against Uriah Hevener, as

administrator of David McGlaughlin, and the legatees and devisees under his will, to settle the estate of David McGlaughlin and fix upon said Hevener as his administrator a liability for *devastavit* of the assets of David McGlaughlin, and to charge the lands of which he died seized, which were devised by him to certain children, and conveyed by them to H. A. Yaeger. This case resulted in a decree against Uriah Hevener in favor of Turk, receiver, for $2,124.61 and costs. This decree was simply personal against Hevener for the liability because of a *devastavit* of the assets of David McGlaughlin, and did not pass on the liability of the land willed by him to his children to answer Turks demand. From this decree Uriah Hevener and Nancy A. Hevener, a daughter of David McGlaughlin and devisee under his will, took this appeal.

Nancy A. Hevener demurred to the bill, and it is contended that the court erred in overruling the demurrer. The argument in support of the demurrer is that the bill is multifarious. We may say that the bill has three objects in view. One is to make Uriah Hevener personally liable for a *devastavit* committed by him as administrator of David McGlaughlin, and as incident thereto to settle the accounts of said administrator and surcharge and falsify *ex parte* settlements made by him. A second object is to subject to Turk's debt land willed by David McGlaughlin to certain ones of his children, in case the personal assets of his estate chargeable to Hevener as his administrator should be insufficient to pay Turk's debt. The third object is to set aside certain conveyances made by certain ones of the devisees of David McGlaughlin of such lands to H. A. Yeager, and to subject such lands to the payment of Turk's debt, on the theory that such conveyances were made with fraudulent intent to defeat Turk in the recovery of his demand. It seems clear that Turk had right to file a bill to settle the estate of David McGlaughlin and the accounts of his administrator, and to surcharge and falsify *ex-parte* settlements which had been made by the administrator, and to establish a liability on the administrator for a *devastavit,* and have a decree for his debt against that administrator. It seems plain that in the settlement of this estate the legatees and devisees under the will of David McGlaughlin were proper and necessary parties—at least proper parties, if not necessary parties. View the matter only as to the

personal assets. It is true that where a creditor of a dead man's estate seeks simply to recover his debt out of the personal assets, the personal representative is the only necessary party, as held in *Jones* v. *Reid,* 12 W. Va. 350. It would rather seem to me that as the creditor seeks to subject the personal assets going to the distributees or legatees, and thereby take it from them, they would be so far proper, though not necessary parties, as to repel a charge of multifariousness against a bill. As the personal representative holds title to the personal assets, and fully represents the same, and a decree against him payable out of the personal assets binds legatees or distributees, they are not necessary parties; but can we say they are improper parties? But, the contention is that the devisees and their interests are foreign to the matter of the recovery of the debt against the personal estate and the establishment of a *devastavit*. It is every day's practice for a creditor to sue both the personal and real representatives of a decedent to get his debt from the personal assets as the primary fund for payment of debts, and in default of such assets to hold the real estate liable, as both the real and personal estate of a decedent are liable for his debts. And certainly the effort to establish a liability on the personal representative for a *devastavit,* would not render the bill multifarious, because that is incident to, and a result of, the settlement of his accounts and the marshalling of assets. And the surcharging of his *ex parte* settlements would not change it. A creditor can file a bill against the lands of his principal and his surety, to get his debt from either, holding the lands of the principal liable first, and those of the surety next, if necessary. So with the personal and real assets of a decedent. The owners of both may be brought before the court to seek satisfaction first of the personalty and next of the reality. And are not the real representatives interested in such case in the establishment of a debt against the estate and its amount? Certainly in all cases where there are two funds answerable for a demand, the one primarily, the other secondarily in case of its failure, both of those funds and their owners may be brought before the court, because they are both interested in the establishment of the liability and its amount, because one is liable when the other fails to satisfy, and it avoids two suits. A bill may be framed with a double aspect, and ask relief in the alternative; it may ask relief out of one

fund, or if the court deny that, then out of another; or ask relief against one man, and if he be not liable, then against another. Such is the case even where there is no relation of primary or secondary liability, like principal and surety, or the personal and real assets of a decedent; but certainly more plainly still in those cases. So they bear relation to the same subject matter such alternative relief may be asked. *Zell Guano Co.* v. *Heatherly,* 38 W. Va. 409. I do not understand counsel to insist that to bring the personal and real assets before the court makes the bill multifarious; but I understand the counsel to insist that the introduction into the case of the conveyances from Nancy H. Hevener, James L. McGlaughlin and Joseph J. McGlaughlin to H. A. Yeager of the land devised to them by David McGlaughlin, and the rights of Yeager under said conveyances, renders the bill multifarious. I have shown above that is was proper to bring the personal and real assets before the court to answer the plaintiff's demand, and that the land devised by David McGlaughlin to his children was liable to Turk in default of personal assets. That being so, is it possible that when the devisees have fraudulently conveyed assets of the decedent liable for his debts to a fraudulent grantee, the creditor cannot follow up such assets into the hands of the fraudulent grantee? Has not that fraudulent grantee a connection with the subject matter of litigation which renders him a proper party? Indeed, as he has the legal title to the land, is not the creditor bound to make him a party? How could the court sell the land without his presence? How could it confer legal title upon the purchaser by a sale without his presence? The land is not before the Court without his presence. The very *res* to be acted on would be absent from the case. If he were left out of the case, and the court would discover it, it would of its own motion stop until he was made a party. What good would it do to bring only the devisees before the court, they having no legal title? A bill to subject property and remove a fraudulent judgment binding it as a lien, or any other obstruction by any transfer in the way of the creditor, is not multifarious. *Stewart* v. *Stewart,* 27 W. Va. 167. Endless authority could be cited for this position were it necessary.

Another theory for the demurrer is that Uriah Hevener is not connected with the conveyance of the land to Yeager. What of that. He is a necessary party on the grounds already shown,

and Yeager only comes in because he has assets of David Mc-Glaughlin that are secondarily liable derived from the devisees and liable in the alternative. Yeager is not a necessary party because of his relation to Uriah Hevener, but because of his relation to the devisees who conveyed to him, and they being proper and necessary parties, it follows as a consequence that Yeager is also, because he holds assets from those devisees.

Another theory for the demurrer is that the bill does not show a *prima facie* case against Nancy A. Hevener as a devisee of David McGlaughlin, because Turk's decree was in a case to which she was not a party, and that a decree or judgment against a personal representative only is not even *prima facie* evidence of a debt as against heirs or devisees of the realty. That legal proposition is true. A decree against the personal representative is binding upon him, and binding also upon legatees and distributees as to the personal assets, because there is a privity between him and them, he fully representing the personal estate and its owners; but this is not so as to heirs or devisees of realty. Therefore, Turk's decree, in and of itself merely, does not show a *prima facie* liability against Nancy A. Hevener; but that does not close the question; for there is the bill which states that her father, David McGlaughlin, was executor of Hugh McGlaughlin, and as such became indebted to his estate in his lifetime, and if that shall be proven by competent evidence, he is under a liability. The demurrer takes the bill for true. So it is not the decree which renders the land devised to Nancy A. Hevener liable, but the fact stated in the bill that her father, in his lifetime rested under such liability. So the demurrer was properly overruled. I have said thus much of it only in deference to the confidence in it manifested by counsel in oral and printed argument, and not because I think the question a grave one. And I may add that as yet there has been no decree prejudicing Mrs. Hevener, unless it is consequential from a personal decree against Uriah Hevener. The land devised to her has not yet been rendered liable, and may never be. Even if there were error in overruling the demurrer, she could not complain of it, because she is not yet aggrieved. To reverse a decree a party must show that he is aggrieved by the error. *Furbee* v. *Shay,* 46 W. Va. 736. Uriah Hevener did not demur to the bill.

As to the merits. The decree, based upon a commissioner's report, found a balance against Uriah Hevener on account of

bonds of the estate which he actually collected as shown by an *ex parte* settlement made by him prior to this suit, and for personal property which David McGlaughlin owned, and which was taken possession of by the legatees under the will before his death. McGlaughlin made a will and then became insane, and the legatees divided out the property among themselves according to the will. Uriah Hevener did not as administrator reclaim this property, but on the contrary assented to the legacies and allowed the legatees to retain the property under the will—assented to such legacies before debts were paid without taking any refunding bonds. I need only refer to the case of *McGlaughlin* v. *McGlaughlin,* 43 W. Va. 226, to show that this is a *devastavit* rendering the administrator liable for such property. That case holds that an executor who exhausts the personal estate of the testator in paying specific legacies will, as to creditors, be considered as committing a *devastavit,* whether he had notice of the debts due such creditors at the time he paid such legacies or not. But in this case Hevener knew of this Turk debt, because he was a party to the suit in which it was decreed. It was a decree against him as executor of David McGlaughlin.

Counsel would have us go behind the former decision of this Court and the decree of the circuit court in another suit, fixing a liability on David McGlaughlin as executor of Hugh McGlaughlin and review the decrees; but whether they be right or wrong, we cannot inquire, they being *res judicata.*

Complaint is made that the commissioner refused to allow Hevener costs expended by him in taking the decree in the case of *McGlaughlin* v. *McGlaughlin* to the Court of Appeals. It seems to me that this complaint is well founded. The law is well settled that costs spent by a personal representative in the prosecution or defense of a claim for or against his estate are to be credited to him out of the assets as a part of the costs of administration. 2 Lomax on Executors 501. Representing the personal estate, the executor or administrator, under his oath and duty, may defend a large claim set up against the estate, a litigable claim, not clearly valid, and unless it is affirmatively shown that he acted badly, was guilty of improper action, he ought to be credited with legal costs and reasonable counsel fees. He would be allowed them in the circuit court, and I see no reason why he might not *bona fide,* and under the advice of counsel, carry the case into an appellate court, and be allowed

his costs. True, he would not be compelled to appeal for his own protection; but in the exercise of a reasonable discretion for the interests of the estate, he might of his own motion, and more clearly still at the instance of interested parties, seek a reversal in a higher court. The commissioner says that the liability was for a *devastavit* by David McGlaughlin. That is no difference. It was a demand against his estate which Hevener litigated. Unless it be clearly shown that Hevener's contestation of the claim was mismanagement and misconduct, he should be allowed legal costs and reasonable counsel fees and other charges incident to the appeal. He spent several hundred dollars in this appeal, but was refused any allowance therefor, and we think this was error. This decision is not to be held as final against Hevener touching the personal property of which the legatees took possession before the death of David McGlaughlin so as to estop him from showing that some of it was not in being at the death of David McGlaughlin. The commissioner says in his report that at the time of the qualification of the administrator, "the most of it was in being in the hands of said legatees," leaving it in doubt whether all of it was reclaimable by Hevener. He may show just what property was in being and reclaimed by him when he qualified. The commissioner ascertained the value of that property merely from the assessor's books. The assessment was made upon the basis given in by McGlaughlin or some of his family, according to the report, but the evidence shows that a son gave in the property to the assessor. Hevener may show that such assessment was erroneous, if he can, as it is not conclusive upon him. We, therefore, reverse the decree and remand the case to the circuit court for further proceedings.

*Reversed.*